Roberto SUAREZ, Appellant,

v.

Marjorie JORDAN, Appellee.

No. 14–99–00807–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 28, 2000.

Reginald Bussey, El Paso, for appellant.

R.B. Stanton, Pasadena, for appellee.

Panel consists of Justices MAURICE AMIDEI, ANDERSON, and FROST.

## OPINION

ANDERSON, Justice.

This appeal concerns the alleged creation of a prescriptive easement and its implications for a bona fide purchaser for value of real estate. Appellant Roberto Suarez ("Roberto") appeals the trial court's grant of appellee Marjorie Jordan's motion for summary judgment and the trial court's rendition of a final judgment based upon the interlocutory summary judgment and upon an alleged settlement agreement. In four issues presented, Roberto asserts: (1) that the trial court erred by granting Jordan's motion because Jordan did not conclusively establish her right to a prescriptive easement on his property; and (2) that the trial court erred by enforcing the Settlement Agreement against Roberto even though Roberto never agreed to be bound by the Settlement Agreement. We reverse and remand this case to the trial court for further proceedings consistent with this opinion.

## I.

### Background

Roberto purchased a home from Santiago Flores, Jr. and Martha Flores. At the time of the sale, Roberto did not know that Mr. and Mrs. Flores were defendants in this lawsuit. In her original petition in this case, Jordan sued Mr. and Mrs. Flores, seeking to establish that a ten inch strip of the Flores' property was subject to a prescriptive easement in favor of Jordan. After moving into his new home, Roberto began building a fence, at which time his neighbor, Jordan, told him that he could not fence this property as it was the subject of litigation. Jordan amended her petition to add Roberto as a defendant. Jordan served Roberto with the following requests for admissions:

1. Admit that the Defendant as designated in this lawsuit is a proper party to this suit involving the existence of a user right upon and across 15334 Elgin, Channelview, Harris County, Texas.

2. Admit that you were in the process of building a fence, fencing off an area involving a driveway to which Plaintiff utilizes as access to some buildings upon her property located in the rear of her property.

3. Admit that you knew about the "right-of-way" that was established by the Plaintiff as result of her tenants going back and forth to the rear portions of her lot.

4. Admit that Plaintiff has tenants living on or about her property.

5. Admit that Plaintiff has tenants living in the rear of her property.

6. Admit that Plaintiff occupied her property prior to your purchasing the house and lot upon which your property is located next door.

7. Admit that you purchased the property from a relative.

Roberto did not respond to these requests for admissions, so Jordan filed a Motion for Imposition of Sanctions and for Summary Judgment Based Upon Admissions Deemed. Jordan's motion appeared to seek $750 as attorney's fees for the prosecution of this suit and $150 as a discovery sanction. The trial court granted Jordan's motion in part, signing an interlocutory summary judgment. The judgment that the trial court signed is entitled "Order Granting Sanctions and Summary Judgment." The trial court, however, only awarded $750.00. It is not

clear whether the $750 was intended as a discovery sanction or as attorney's fees for prosecuting the suit. Reading the motion and the interlocutory judgment together indicates that no sanctions were awarded, only attorney fees for prosecuting the suit.[1] However, the final judgment later signed by the trial court refers to the "$750.00 sanction."

After the trial court signed the interlocutory summary judgment, a court-ordered mediation was scheduled. Jordan and Mr. and Mrs. Flores appeared for the mediation in person, along with their respective counsel. Roberto's attorney, Neal Pickett, did not appear. Roberto did not appear in person either. Roberto had a job out of town that day. Roberto sent his son, Gilberto Suarez ("Gilberto")[2], to the mediation because of this job and because Gilberto speaks English more fluently than his father. Gilberto, without assistance of counsel and acting against his father's wishes, signed a Settlement Agreement that admitted the existence of the disputed ten-inch easement on Roberto's property and that required Roberto to move his fence poles.

After the mediation, Roberto filed a motion for new trial and requested a hearing. At the hearing, Gilberto testified that he had no authority to sign the Settlement Agreement on behalf of his father, that he signed the Settlement Agreement under pressure from Mr. and Mrs. Flores and their attorney, and that, at the time he signed the Settlement Agreement, he knew that his father would probably not have signed this agreement. After Gilberto signed the Settlement Agreement, the words "for 3rd Party Defendant" were added after his name. This notation apparently was meant to refer to Roberto.

Although Roberto was added by Jordan as a defendant—not a third party defendant—in her First Amended Original Petition, and although Mr. and Mrs. Flores never filed third party claims against Roberto, Jordan did obtain an order from the trial court granting her leave to add Roberto as a "third party defendant." This designation appears to be a misnomer.

There was no testimony in the trial court below that Gilberto was authorized to sign the Settlement Agreement on behalf of his father, and there was no testimony that Gilberto told any of the people at the mediation that he was authorized to sign the Settlement Agreement on behalf of his father. The trial court indicated that it did not wish to hear testimony from Roberto. The trial court further stated that Roberto was "obviously" not a party to the Settlement Agreement since his son signed it. The trial court, however, denied Roberto's motion for new trial and signed a final judgment. This final judgment incorporated the interlocutory summary judgment against Roberto, awarded Jordan an easement over Roberto's property, required Roberto to move his fence ten inches closer to his home, and bound Roberto to the terms of the Settlement Agreement.

## II.

### Summary Judgment

In Roberto's first issue, he contends the trial court erred in granting summary judgment based on deemed admissions which fail to establish the essential elements of a prescriptive easement. The standards for review of a summary judgment are well established: (1) the movant must show there is no genuine issue of

1. The only basis for an award of attorney's fees stated in Jordan's petition is Chapter 38 of the Texas Civil Practice and Remedies Code, which applies to contract actions, not to actions to establish prescriptive easements.

2. Roberto Suarez's son is also referred to in the reporter's record as "Roberto Suarez, Jr."

Appellant, however, stated in his opening brief that the son who attended the mediation and who testified in the trial court was "Gilberto Suarez." Because Jordan did not contradict these facts in her brief, we accept these facts as true and refer to this son as "Gilberto.". See Tex .R.App.P. 38.1(f).

material fact and that movant is entitled to a judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo. See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994).

■■■ A person acquires a prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years. *See Brooks v. Jones,* 578 S.W.2d 669, 673 (Tex.1979); *Stallman v. Newman,* 9 S.W.3d 243, 248 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). The "adverse use" element of a prescriptive easement requires that the claimant's use of the alleged easement be of such a nature and character as to notify the true owner that the claimant is asserting a hostile claim to the land. *See Stallman,* 9 S.W.3d at 248. In order to obtain a summary judgment on her prescriptive easement claim, Jordan was required to present evidence establishing each of the elements of a prescriptive easement as a matter of law. *See Nixon,* 690 S.W.2d at 548; *Boyter v. MCR Const. Co.,* 673 S.W.2d 938, 940–41 (Tex.App.—Dallas 1984, writ ref'd n.r.e.)(summary judgment reversed because deemed admissions did not prove up all essential elements of plaintiff's case as a matter of law).

■■■ In this case, the trial court granted summary judgment based on the seven deemed admissions that we recited above.

These deemed admissions address, among other things, whether Roberto "knew about the 'right-of-way' that was established by the Plaintiff as a result of her tenants going back and forth to the rear portions of her lot." These deemed admissions do not establish any of the following: (1) when Roberto obtained this alleged knowledge; (2) the nature and extent of the alleged "right-of-way"; (3) that Jordan made use of an easement upon Roberto's land in an exclusive, open and adverse manner; or (4) that Jordan's use of this easement was continuous for at least ten years. The deemed admissions upon which the trial court based its summary judgment do not establish the essential elements for a prescriptive easement. *See Stallman,* 9 S.W.3d at 248 (noting essential elements of prescriptive easement are: open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years). Therefore, granting a summary judgment based on these admissions was error.[3] Accordingly, we sustain Roberto's first issue.

### III.

### Settlement Agreement

■■■ Roberto's three remaining issues challenge the final judgment enforcing the Settlement Agreement. Roberto asserts that the Settlement Agreement does not bind him because he did not sign it and because Gilberto was not authorized to sign the agreement on his behalf. We sustain these issues and hold that Roberto is not bound by the Settlement Agreement as a matter of law.

■■■ The law does not presume agency. *Buchoz v. Klein,* 143 Tex. 284, 184 S.W.2d 271, 271 (1944). Absent actual or

---

**3.** In her brief, Jordan suggests that we should affirm the summary judgment based on her affidavit attached to the motion for summary judgment. A summary judgment, however, cannot be affirmed on grounds not expressly set out in the motion for summary judgment. *Stiles v. RTC,* 867 S.W.2d 24, 26 (Tex.1993).

Jordan's motion did not expressly seek judgment based on her affidavit; therefore this court may not affirm on this ground. *Id.* In any event, Jordan's affidavit did not conclusively prove the essential elements of a prescriptive easement.

apparent authority, an agent cannot bind a principal. *See Currey v. Lone Star Steel Co.,* 676 S.W.2d 205, 209 (Tex.App.—Fort Worth 1984, no writ). Both actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *See Currey,* 676 S.W.2d at 210.

■ Actual authority denotes that authority which the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of ordinary care allows the agent to believe himself to possess. *See Spring Garden 79U, Inc. v. Stewart Title Co.,* 874 S.W.2d 945, 948 (Tex.App.—Houston [1st Dist.] 1994, no writ). There is no power of attorney in the record or anything in the Settlement Agreement itself to demonstrate that Roberto gave Gilberto actual authority to act as his agent. In fact, Roberto introduced uncontradicted evidence establishing that his son did not have actual authority to act as his agent.

■ Certain limitations apply in determining whether apparent authority exists. *Humble Nat. Bank v. DCV, Inc.,* 933 S.W.2d 224, 237 (Tex.App.—Houston [14th Dist.] 1996, writ denied). First, apparent authority is determined by looking to the acts of the principal and ascertaining whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *See NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 953 (Tex.1996); *Humble Nat. Bank,* 933 S.W.2d at 237. Only the conduct of the principal may be considered; representations made by the agent of his authority have no effect. *Southwest Title Ins. Co. v. Northland Bldg. Corp.,* 552 S.W.2d 425, 428 (Tex.1977); *Humble Nat. Bank,* 933 S.W.2d at 237. Second, the principal must either have affirmatively held the agent out as possessing the authority or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Nati-*

*onsBank,* 922 S.W.2d at 952, 953; *Humble Nat. Bank,* 933 S.W.2d at 237. Finally, a party dealing with an agent must ascertain both the fact and the scope of the agent's authority, and if the party deals with the agent without having made such a determination, she does so at her own risk. *Humble Nat. Bank,* 933 S.W.2d at 237.

The fact that Gilberto signed the Settlement Agreement does not bind Roberto because there is nothing in the Settlement Agreement or elsewhere in the record which would indicate Gilberto was acting as the authorized agent of Roberto. The mere fact of a father-son relationship does not clothe Gilberto with authority to act on behalf of his father. Gilberto testified that he had no authority to sign the Settlement Agreement on behalf of his father, that he signed the Settlement Agreement under pressure from Mr. and Mrs. Flores and their attorney, and that, at the time he signed the Settlement Agreement, he knew that his father would probably not have signed this agreement. The Settlement Agreement does not explicitly state that Gilberto signed it on behalf of his father. After Gilberto signed the Settlement Agreement, the words "for 3rd Party Defendant" were added after his name. Apparently this was meant to refer to Roberto, although Roberto was a defendant in the trial court; he was not a third party defendant.

■ There was no testimony in the trial court that Gilberto was authorized to sign the Settlement Agreement on behalf of his father, and there was no testimony that Gilberto told any of the people at the mediation that he was authorized to sign the Settlement Agreement on behalf of his father. There is no evidence of any words or conduct of Roberto that would lead a reasonably prudent person to believe that Gilberto had the authority to enter into the Settlement Agreement on behalf of Roberto. *See NationsBank,* 922 S.W.2d at 953. The Settlement Agreement recites that "[e]ach signatory.. warrants and repre-

sents ... [t]hat such person has authority to bind the party or parties for whom such person acts." Gilberto signed the document; Roberto did not. Therefore, Gilberto—not Roberto—made this representation. Without acts of the purported principal (Roberto), acts of a purported agent (Gilberto) which may mislead persons into false inferences of authority, however reasonable, will not serve as predicate for apparent authority. *See Southwest Land Title Co. v. Gemini Financial Co.*, 752 S.W.2d 5, 7 (Tex.App.—Dallas 1988, no writ).

It is a fundamental tenet of contract law that in order to be bound by an agreement, one must be a party to it. The Settlement Agreement does not identify Roberto as a party or a signatory to the contract. Neither Roberto nor his counsel signed the Settlement Agreement. The trial court correctly stated at the hearing that Roberto was "obviously" not a party to the Settlement Agreement. Roberto can only be affected by the Settlement Agreement if Gilberto's signature on the agreement binds Roberto under agency principles. The record in this case, however, is barren of any evidence which would suggest that Roberto clothed Gilberto with either actual or apparent authority to bind Roberto to the Settlement Agreement. Therefore, Gilberto's signing of the Settlement Agreement cannot be deemed the act of Roberto and cannot bind Roberto as a matter of law. *See Southwest Land Title Co.*, 752 S.W.2d at 7. It was error for the trial court to enter final judgment based on the Settlement Agreement. Accordingly, we sustain Roberto's remaining issues and reverse and remand this case to the trial court for further proceedings consistent with this opinion.