Affirmed and Opinion filed September 9, 2003















Affirmed and
Opinion filed September 9, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00708-CV

____________

 

AQUADUCT, L.L.C., Appellant

 

V.

 

TRAVIS J. McELHENIE AND WIFE, LISA CHRISTIAN McELHENIE, 

AND NORTH
AMERICAN MORTGAGE COMPANY, Appellees

 

__________________________________________________________________

 

On Appeal from
the 190th District Court

Harris County, Texas

Trial Court
Cause No. 00-43229

 

__________________________________________________________________

 

O P I N I O
N

            Appellant Aquaduct,
L.L.C. challenges the trial court’s finding that it authorized its loan
servicing agent to receive full payment of a mortgage note and the trial
court’s award of attorney’s fees to appellee, North
American Mortgage Company.  We affirm.




 








                              I.  Procedural and Factual Background

            In November 1996, Travis McElhenie and Linda Christian (“the McElhenies”)[1]
executed a promissory note for $28,045.22 in favor of Millennium Interests,
Ltd. (“the McElhenie Note”) to purchase a
homestead.  The McElhenie
Note required the McElhenies, as mortgagors, to repay
Millennium Interests, as mortgagee, “both principal and interest” at 10%
annually in “360 monthly principal and interest installments of $216.12 per
month,” and a tax escrow fee of $15 per month. 
The first installment was due on November 1, 1996, followed by successive
installments payable on the first of each month “until the full amount of the
consideration of principal and interest is paid.”  To secure this mortgage debt, the McElhenies signed a deed of trust (“the Millennium Deed”)
that same month, granting Millennium Interests a vendor’s lien and a
deed-of-trust lien in the property. 
Millennium recorded this deed. 
Neither the McElhenie Note nor the Millennium
Deed established any penalty for early payment of the full amount owing on the
mortgage debt.

            In April 1997, Millennium
transferred the McElhenie Note to Aquaduct,
L.L.C., together with the liens securing the McElhenies’
mortgage debt.[2]  The transfer of lien instrument instructed
the Harris County clerk’s
office to return the original transfer to Gibraltar Mortgage Corporation (“Gibraltar”) after
filing.  Aquaduct
appointed Gibraltar as its loan servicing agent
and authorized Gibraltar to collect monthly payments
from the McElhenies on the McElhenie
Note.  As the loan servicing agent, Gibraltar collected
principal and interest payments from the McElhenies,
accounted for that money to Aquaduct each month, and
forwarded the payments to Aquaduct each month.  

            In September 1998, the McElhenies refinanced their mortgage through National
Mortgage Link, I Ltd. (“National Mortgage Link”) by renewing and extending the McElhenie Note.  To
do so, the McElhenies executed a deed of trust naming
National Mortgage Link as the beneficiary and a renewal and extension rider
accompanying the deed of trust (“Renewed McElhenie
Note”).  The deed of trust was recorded.  In refinancing their mortgage, the McElhenies agreed to pay National Mortgage $86,850,
representing the amount they owed under the Renewed McElhenie
Note.  To secure the Renewed McElhenie Note, the McElhenies
encumbered their homestead with a lien in favor of National Mortgage Link.

            Old Republic Title Company (“Old Republic”)
represented National Mortgage Link at the closing of this transaction.  At the closing, in a simultaneous
transaction, National Mortgage Link assigned the Renewed McElhenie
Note and the accompanying deed of trust lien to North American Mortgage Company
(“North American”).  The deed was
recorded.  Old Republic requested
and obtained from Gibraltar a statement of the total
remaining balance on the McElhenie Note.  A title insurance policy was also obtained
and it revealed in part the lien Millennium assigned to Aquaduct.  To take a first lien position on the McElhenies’ homestead, National Mortgage Link and North
American payed to Gibraltar the
remaining balance on the McElhenie Note ($28,126.61)
in September 1998.  Old Republic, acting on
behalf of National Mortgage Link and North American, sent the check to Gibraltar and also
asked Gibraltar to execute and return to Old Republic for filing
a  release of lien or transfer of lien.  Gibraltar ignored
this request, and deposited the check in its Aquaduct
account.  However, Gibraltar never paid
these funds over to Aquaduct, and Gibraltar apparently
converted the funds to its own use.

            In August 2000, Aquaduct
filed this suit asking the trial court to declare its lien superior to North
American’s lien on the McElhenie homestead.  Aquaduct argued
payment to Gibraltar of the full amount owing
under the McElhenie Note was improper because Gibraltar only had
authority to accept monthly payments of principal and interest.  North American counterclaimed for a judgment
declaring its lien superior to Aquaduct’s lien.  Following a bench trial, the court found Aquaduct authorized its agent, Gibraltar, to accept
payment in full of outstanding balances on its notes, declared Aquaduct’s lien satisfied, and ordered Aquaduct
to execute a release of lien.

                                                       II.  Issues Presented

            Aquaduct
presents the following issues for review:

            (1)       Is there
evidence to support the trial court’s finding that Aquaduct’s
loan-servicing agent, Gibraltar, had authority to collect final payment on
the McElhenie’s mortgage note?

            (2)       Is
circumstantial evidence sufficient to support the trial court’s finding that Gibraltar had authority to collect
final payment on the note?

            (3)       Was North American entitled to attorney’s
fees under the Declaratory             Judgments
Act when its counterclaim was allegedly a suit to clear title? 

(4)       Was
the trial court’s award of attorney’s fees under the Declaratory Judgments Act
equitable and just?

 

III.  Analysis and Discussion 

A.        Did Gibraltar have authority to collect
the final payment on the McElhenie mortgage note?

            In its first and second issues, Aquaduct challenges the legal sufficiency of the evidence
to support the trial court’s finding that Gibraltar had agency
authority to collect payment of the outstanding balance on the McElhenie Note.  In
conducting a no-evidence analysis, we review the evidence in a light that tends
to support the disputed findings and disregard all evidence and inferences to
the contrary.  Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d
778, 782 (Tex.
2001).  If more than a scintilla of
evidence exists, it is legally sufficient. 
Id.  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about a vital fact’s existence.  Id. at 782–83.


            Aquaduct
maintains the trial court improperly relied on circumstantial evidence to
infer, from Gibraltar’s authority to collect
monthly payments of principal and interest, that Gibraltar had
authority to collect payment in full on behalf of Aquaduct.  The question of agency is usually one of
fact, and circumstantial evidence may be used to establish the agency
relationship and to determine the scope of the agent’s authority.  St.
Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank
Co., Inc., 917 S.W.2d 29, 48 (Tex. App.—Amarillo 1995,
no writ); Found. Reserve Ins. Co. v.
Wesson, 447 S.W.2d 436, 438 (Tex. Civ.
App.—Dallas 1969, writ ref’d).  Absent actual or apparent authority, an agent
cannot bind a principal.  See Currey v. Lone
Star Steel Co., 676 S.W.2d 205, 209 (Tex. App.—Fort Worth 1984, no
writ).  Both actual and apparent
authority are created through conduct of the principal communicated either to
the agent (actual authority) or to a third party (apparent authority).  See id.
at 210.  Actual
authority denotes that authority which the principal intentionally confers upon
the agent, or intentionally allows the agent to believe he has, or by want of
ordinary care allows the agent to believe himself to possess.  Suarez
v. Jordan, 35 S.W.3d 268, 272–73
(Tex. App.—Houston [14th
Dist.] 2000, no pet.); see also Spring Garden 79U, Inc. v. Stewart Title Co., 874 S.W.2d 945, 948 (Tex.
App.—Houston [1st Dist.] 1994, no writ).

            The record shows that Gibraltar had
implied actual authority to collect full payment of outstanding balances on
behalf of Aquaduct. 
Aquaduct acquired several mortgage notes,
including the McElhenie Note, from Millennium
Interests, Ltd.  Millennium had hired Gibraltar to service
its notes, but required debtors to send payments directly to Millennium, rather
than sending them to Gibraltar.  After acquiring the notes, Aquaduct kept Gibraltar as the
loan servicer without making a written agreement that
defined the scope of Gibraltar’s
authority.  Vernon Young, the president
of Aquaduct, testified that, although not explicitly
discussed, Gibraltar had authority to perform numerous tasks, including
authority: (1) to conduct the day-to-day business of handling Aquaduct’s notes; (2) to collect and remit monthly payments
of principal and interest; (3) to identify any delinquencies; (4) to manage
escrow payments; (5) to issue IRS Form 1098 mortgage interest statements to
debtors on which Gibraltar was identified as the “lender/recipient” of
payments; and (6) to issue “payoff statements” upon request that stated the
remaining balance on a note.  There was
no indication on the payoff statement that a full payment should be made to Aquaduct.

            As the servicing agent, Gibraltar sent the McElhenies, and Aquaduct’s other
newly-acquired debtors, a coupon book and letter in May 1997.  The letter stated that servicing of the McElhenie Note had been transferred to Gibraltar and
directed the McElhenies to send their payments to Gibraltar and not to
Millennium.  The letter did not indicate
that a full payment should be treated any differently from a regular monthly
payment, and the record suggests this is the only payment instruction Aquaduct ever gave its debtors.  The letter did not mention Aquaduct or state that Millennium no longer held the
mortgage note.  Young testified that Aquaduct authorized Gibraltar to send
this letter and that Aquaduct never had any
communication with the McElhenies or its other
debtors.

            Young also testified that he never
gave Gilbraltar instructions on how to treat the
events leading up to full payment on a note and did not tell Gibraltar it could
not accept full payments until the summer 2000. 
Gibraltar provided Aquaduct
with monthly statements that showed the amounts collected from each
debtor.  Aquaduct
knew Gibraltar accepted full payment of the McElhenie Note because its own records for September 1998
show Gibraltar deposited $28,126.61 in the
account it maintained for receivables on the McElhenie
Note.  A summary of accounts Gibraltar provided Aquaduct shows no balance owing on the McElhenie
Note in November 1998.  Aquaduct’s records show that Gibraltar collected four full
payments, including the McElhenie payment, over a
span of two years before Aquaduct told Gibraltar (in
summer 2000) that Gibraltar was not to accept full payments.  From these 

 class=Section3>

facts,
we conclude the evidence is legally sufficient to prove Gibraltar had
implied actual authority to accept full payment of the McElhenie
Note on behalf of Aquaduct.

            In the interest of justice, we
address Aquaduct’s further argument that, under
article three of the Uniform Commercial Code (“UCC”), Gibraltar could not
have had authority to collect the loan payoff because the McElhenie
Note was a negotiable instrument and Gibraltar did not
have actual physical possession of the Note at the time of the full
payment.  See Tex. Bus. & Com.
Code Ann. §§ 3.301, 3.602 (Vernon 2002). 
Aquaduct reasons because a negotiable
instrument is paid only to the extent payment is made to a person entitled to
enforce the instrument, and a person entitled to enforce the instrument is
normally only a person in possession of the instrument, that the UCC did not
allow the McElhenies to make their final payment to Gibraltar.  See id.
§ 3.602 (providing a negotiable instrument is paid to the extent it is paid
to a person entitled to enforce the instrument); id. § 3.301
(providing a holder of the instrument or a nonholder
in possession of an instrument are persons entitled to enforce).  Under Aquaduct’s
construction, the UCC prohibits loan-servicing agreements, even for non-final
payments, unless the principal transfers possession of the instrument to the
servicing agent.  See id. §§ 3.301, 3.602.  Aquaduct’s proposed interpretation of the UCC is untenable.


            Unless displaced by the provisions
of the UCC, agency law supplements the provisions of the UCC.  Tex.
Bus. & Com. Code Ann. § 1.103 (Vernon
1994).  Common-law claims and principles
complement the UCC to the extent they do not conflict with UCC provisions.  See
Bryan v. Citizens Nat’l Bank, 628
S.W.2d 761, 764 (Tex. 1982); Bank One, Texas, N.A. v. Little, 978 S.W.2d 272, 277 (Tex. App.—Fort Worth 1998, pet. denied).  We find nothing in sections 3.301 and 3.602
of the Texas Business and Commerce Code that displaces the common-law agency
principles at issue in this case. 
Accordingly, the McElhenies’ final payment to Aquaduct’s authorized agent, Gibraltar, is deemed
to be payment to Aquaduct, a holder in possession of
the negotiable instrument.  See Suarez, 35 S.W.3d at 274.  Although the parties have not cited a Texas case
addressing this exact point, courts in at least two other jurisdictions where
the UCC has been adopted have reached the same conclusion.  See Tex. Bus. & Com. Code Ann. §
1.103(b)(3), recodified
at Tex.
Bus. & Com. Code Ann. § 1.103(a)(3) (effective Sept. 1, 2003)
(providing the UCC must be applied and construed to make uniform law among
jurisdictions); Tex. Gov’t
Code Ann. § 311.028 (Vernon
1998) (“A uniform act included in a code shall be construed to effect its
general purpose to make uniform the law of those states that enact it”); Skott v. Bank of Am. Ill., 468 S.E.2d 359,
360–61 (Ga. 1996) (finding authority to accept mortgage payoff when agent
authorized to collect payments as servicing agent and no limitations placed on
that authority); United Mo. Bank v. Beard, 877 S.W.2d 237,
239–40 (Mo. Ct. App. 1994) (finding servicer had
implied actual authority to accept prepayment of mortgage balance and holding
principal who selected and authorized collecting agent should bear loss caused
by absconding agent); Tedesco v. Bekker, 741 S.W.2d 896, 899 (Mo. Ct. App. 1987)
(finding express authority to collect full payment from broad language
appointing servicer exclusive agent to manage loan
and “collect all funds due”). 
Accordingly, we overrule Aquaduct’s first and
second issues.

B.        Did the trial court abuse its discretion
by awarding North American attorney’s fees under the Declaratory Judgments Act?


 

            In its third and fourth issues, Aquaduct argues the trial court’s award of attorney’s fees
to North American was an abuse of discretion for two reasons: (1) because the
counterclaim on which North American prevailed was a suit to clear title; and
(2) because the award of attorney’s fees was not equitable and just.  

            The Texas Declaratory Judgments Act
provides that in any proceeding under the Act, the trial court may award costs
as well as reasonable and necessary attorney’s fees that are equitable and
just.  See Tex. Civ.
Prac. & Rem. Code Ann.
§ 37.009 (Vernon 1997); Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex.
1998).  The trial court has broad
discretion to determine whether to award costs and
attorney’s fees under the Act, and we will not reverse that judgment on appeal
absent a clear showing of abuse.  Bocquet, 972
S.W.2d at 20.  We view the evidence in
the light most favorable to the trial court’s ruling and indulge every
presumption in its favor.  Goebel v. Brandley,
76 S.W.3d 652, 658 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Whether the fees awarded are equitable and
just is a matter of law.  Bocquet, 972
S.W.2d at 21.  It is an abuse of
discretion for the trial court to rule arbitrarily, unreasonably, without
regard to guiding legal principles, or without supporting evidence.  Id.


            The trial court awarded North
American $16,000 in attorney’s fees from Aquaduct
because North American prevailed on its request for declaratory judgment.  The trial court awarded an additional $5,000
in favor of North American in the event of appeal to the court of appeals and
$5,000 for appeal to the Texas Supreme Court, both only payable should North
American prevail.  In its counterclaim
for declaratory judgment, North American asked the trial court to declare that
its lien had priority over Aquaduct’s lien on the McIlhenies’ property. 
A person interested under a deed or contract may have the trial court
determine any question of validity or construction arising under the instrument
and obtain a declaration of rights, status, or other legal relations thereunder.  See Tex.
Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon 1997).  The trial court construed and determined the
validity of the instruments in this case, and it declared the rights, status,
and legal relations thereunder.  

            Aquaduct
essentially argues that North American’s counterclaim is a trespass to try
title suit in the guise of a request for declaratory relief.  Appellant relies primarily on Southwest Guaranty Trust Co. v. Hardy Road
13.4 Joint Venture, in making this argument.  981 S.W.2d 951, 956 (Tex. App.—Houston [1st
Dist.] 1998, pet. denied).  In Southwest Guaranty, the appellate court
upheld the trial court’s denial of attorney’s fees under the Declaratory
Judgments Act because cross-appellant’s suit was for the purpose of clearing
title.  Appellant’s reliance on Southwest Guaranty is misplaced because
the case at bar does not present the same question presented in Southwest Guaranty.  Unlike the present case, in Southwest Guaranty, a landowner brought
suit to clear title to its property, and the trial court rendered judgment
declaring title quieted and removing, annulling, and holding for naught all
clouds on title.  Id. at 952–53,
957.  In holding that the suit was really
a trespass to try title suit, the court noted that the cross-appellant had not
sought to construe any terms of the relevant lien or deed of trust in the trial
court.  Id. at
157.  In the case at bar, the trial court
determined the validity of competing instruments to settle a dispute between two
purported lien holders, and its judgment did not declare title.

            A trespass to try title action is a
procedure by which competing claims to title or the right to possession of real
property may be adjudicated.  See Tex.
Prop. Code Ann. § 22.001-22.045 (Vernon 2000); Rogers v. Ricane Enter., Inc., 884
S.W.2d 763, 768 (Tex.
1994).  To recover in a trespass to try
title action, the plaintiff must recover upon the strength of his own title.  Rogers, 884
S.W.2d at 768.  The plaintiff may recover
(1) by proving a regular chain of conveyances from the sovereign; (2) by
proving a superior title out of a common source; (3) by proving title by
limitations; or (4) by proving prior possession, and that the possession has
not been abandoned.  Id.  North American’s requested relief, and the
relief afforded by the trial court, are not the subject matter of a trespass to
try title action.  Because Aquaduct has not cited, and we have not found, any
authority suggesting that superiority of liens is an improper subject for declaratory
judgment, we overrule Aquaduct’s third issue.  See
Goebel, 76 S.W.3d at 658.

            In its fourth issue, Aquaduct maintains the award of attorney’s fees is
inequitable and unjust because neither North American nor Aquaduct
engaged in culpable conduct.  Aquaduct argues Gibraltar and North
American’s closing agent and title company, Old Republic, are
responsible for this litigation.  In Aquaduct’s view, Gibraltar is
culpable for having converted the funds, and Old Republic is
blameworthy for its failure to require the original McElhenie
Note or a release bearing the holder’s signature before closing.  In light of the trial court’s finding,
supported by the record, that the disputed payment was sent to an agent of Aquaduct—Gibraltar—we cannot say the trial court’s award of
attorney’s fees is inequitable and unjust. 
Nothing in the lending documents Old Republic obtained
named an entity other than Gibraltar as
payee.  The Missouri of Court of Appeals
addressed the same equitable considerations and held that when payment is made
to an authorized agent, the default of an agent is the responsibility of the
principal.  United Mo. Bank, 877 S.W.2d at 245. 
We agree.  Aquaduct’s
conduct in allowing Gibraltar to collect full payments on
its notes made the loss in this case possible, and Aquaduct
may not shift this burden to a party who dealt with its agent.  See id.
 Accordingly, we hold the trial court
did not abuse its discretion in awarding attorney’s fees to North American.

            Having overruled all of Aquaduct’s issues, we affirm the trial court’s
judgment.  

 

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed September 9, 2003.

Panel
consists of Justices Yates, Hudson, and Seymore.

 











            [1]  The record shows Travis McElhenie
married Linda Christian shortly after November 1996, and she assumed his
surname.





            [2]  Several other notes were transferred from
Millennium to Aquaduct at this time, but those notes
are not the subject of this appeal.