Cammy L. Leier v. John Purnell, Helga Purnell, and Stephanie A. Purnell

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-039-CV

CAMMY L. LEIER APPELLANT

V.

JOHN PURNELL, HELGA PURNELL, APPELLEES

AND STEPHANIE A. PURNELL 

------------

FROM THE 211
TH
 DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Cammy Leier filed this suit against Appellees John Purnell, Helga Purnell, and Stephanie A. Purnell for breach of contract and money had and received after the horse that Leier contracted to purchase from the Purnells died.  Both Leier and the Purnells filed motions for summary judgment on all of Leier’s claims.  The trial court granted the Purnells’ motion for summary judgment and denied Leier’s motion for summary judgment.  In three general issues, Leier now argues that the trial court erred by granting the Purnells’ motion and denying hers.  Because we hold that issues of material fact exist regarding whether the Purnells breached the contract and whether they hold money that belongs to Leier, we reverse the trial court’s judgment and remand for trial.

Background Facts

Leier, interested in showing horses, began searching for a horse to purchase.  Leier found a horse, an Appaloosa mare named Zippity Day, that she was interested in purchasing on Mark
 
Shaffer Show Horses‘ website.  Leier, a Nevada resident, traveled to Shaffer’s ranch in Texas to look at Zippity Day, which Shaffer showed her.  After riding the horse, Leier wanted some time to think about the purchase, so she left.

The next morning, Leier returned to Shaffer’s ranch to discuss purchasing the horse.  Shaffer initially told Leier that the horse was $12,500, and Leier countered with an offer of $8,500.  Shaffer then told Leier that $10,000 seemed to be the meeting point.  Leier intended to take the horse with her that day.  Shaffer, however, told her that if she wrote a check for the horse, she could not take the horse until her check cleared and also told her that the horse really was not ready to show yet.  They continued to negotiate.  Shaffer told Leier that if she left the horse for additional training, the horse would be worth three times more by the time of the national competition (“Nationals”).  He told her that for $11,000, she would get the horse, shoeing, vet services, and training, and the horse would be ready to show at Nationals, where he would deliver the horse to her.  Leier agreed to purchase the horse, training, shoeing, vet services, and delivery of the horse at Nationals for $11,000.  Then she asked Shaffer whose name to make the check out to, and he told her to make the check out to him. Leier wrote the $11,000 check payable to Shaffer and handed it to him.  No written contract was made, and no transfer papers or title documents were given to Leier.  Shaffer did not tell Leier that he was not the owner of the horse.

While the horse was being trained at Shaffer’s ranch, Leier continued to ask Shaffer for transfer of ownership papers, but Shaffer never provided them to her.  About five weeks after Leier gave Shaffer the check, the horse died.  After the horse died, Leier found out that the Purnells, not Shaffer, owned the horse.  Similarly, the Purnells did not know the horse had been sold and did not receive any money from Shaffer from the sale until after the horse had died.

After the horse’s death, Leier asked for her money back because the horse could no longer be delivered to her.  Shaffer refused because he had given the money to the Purnells, and the Purnells refused, claiming that Leier had possession of the horse when it died.  Leier then sued Shaffer and the Purnells for breach of contract and money had and received.  The Purnells filed a motion for summary judgment on all of Leier’s claims against them.  Leier filed a combined response and motion for summary judgment.  The trial court granted the Purnells’ motion for summary judgment and denied Leier’s motion for summary judgment.  Leier now brings three general issues on appeal, arguing that the trial court erred by granting the Purnells’ motion for summary judgment and by denying hers.

Breach of Contract

In her first general issue, Leier argues that the trial court erred by granting the Purnells’ summary judgment to the extent that it held, as a matter of law, that the Purnells did not breach the contract.  We agree.  To establish a breach of contract, the plaintiff must prove that (1) a valid contract exists; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged by the breach.
(footnote: 2)  Under Texas law, the requirements of a valid contract are:  (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party’s consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.
(footnote: 3) 
 
Consideration is also a fundamental element of a valid contract.
(footnote: 4)  
The elements of written and oral contracts are the same and must be present for a contract to be binding.
(footnote: 5)
 In this case, the contract at issue was an oral contract, entered into by Leier, the buyer, and Shaffer, the sales agent of the Purnells, the sellers.  It is a basic rule of agency that an agent may not bind his principal in the absence of either actual or apparent authority to do so.
(footnote: 6)  In general, actual authority means authority that the principal (1) intentionally conferred upon the agent;  (2) intentionally allowed the agent to believe that he possessed; or (3) by want of due care allowed the agent to believe that he possessed.
(footnote: 7)  Thus, the creation of actual authority is dependent on manifestations, written or oral, or conduct by the principal communicated to the agent.
(footnote: 8)  “Implied” actual authority exists only as an adjunct to express actual authority 
because implied authority is that which is proper, usual, and necessary to the exercise of the authority that the principal expressly delegates.
(footnote: 9)  Additionally, an agent need not disclose his or her principal’s identity to act on behalf of that principal.
(footnote: 10)  Rather, an agent who contracts on behalf of an undisclosed principal is individually liable on the contract.
(footnote: 11)  The undisclosed principal, however, may also be bound to the contract made if the agent, acting with authority, was intending to act on behalf of the principal.
(footnote: 12)
 Because the Purnells concede that Shaffer was their sales agent, Shaffer had actual authority to bind the Purnells contractually to the sale of the horse.
(footnote: 13)  Furthermore, the Purnells admit that Shaffer was their agent, and Shaffer testified that he acted as their agent, until Leier handed Shaffer the $11,000 check.

The summary judgment evidence shows that Shaffer offered the sale of the horse, training, vet services, shoeing, and delivery of the horse to Leier at Nationals for $11,000.  Leier accepted and then presented Shaffer with an $11,000 check made out to him.  Shaffer later sent an invoice to Leier showing that Leier purchased the horse, training, shoeing, and vet services at a total price of $11,000.  Thus, the evidence shows that the terms of the contract were the sale of the horse, training, shoeing, vet services, and delivery for $11,000.  All the terms were negotiated and agreed to by Shaffer and Leier before Leier gave Shaffer the check.

The Purnells, however, citing no authority to support their argument, contend that they “are not liable for all Shaffer’s acts and omissions within the apparent scope of his authority.  Particularly, the Purnells were never a party to any agreement about delivery of the horse.  In fact, Leier believed the horse belonged to Shaffer, so there would not even be any apparent authority.”  Thus, they allege that, as a matter of law, there were two contracts—a contract for the purchase of the horse and a separate contract where Leier then chose to leave the horse with Shaffer for training, shoeing, vet services, and delivery.  We disagree.  In this case, issues of material fact exist regarding whether Shaffer had apparent authority to bind the Purnells to any terms of the contract other than the sale of the horse alone, that is, to the training, shoeing, vet services, and delivery.

First, there is no evidence in the summary judgment record that there were two contracts.  As set forth above, the evidence shows that multiple terms were negotiated to form one contract requiring one total payment, which was made in full.  There are issues of material fact, however, regarding whether the Purnells are bound by the terms in the contract.

Second, apparent authority is based on the doctrine of estoppel.
(footnote: 14)  One seeking to charge the principal through apparent authority of his agent must establish that the principal knowingly permitted an agent to hold himself out as having authority or that the principal’s actions lacked such ordinary care as to clothe an agent with indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise.
(footnote: 15) Although there is no evidence that the Purnells knowingly permitted Shaffer to hold himself out as having authority that was not expressly granted, the summary judgment evidence raises issues of material fact regarding whether the Purnells’ actions lacked such ordinary care as to clothe Shaffer with indicia of authority to bind the Purnells to the training, shoeing, vet services, and delivery.  The evidence shows that Leier believed that Shaffer was the owner of the horse and therefore had the authority to bind the owner to all the terms of the contract for sale of the horse, which included the training, shoeing, vet services, and delivery.  The evidence shows that Shaffer did not disclose to Leier that he was not the owner of the horse.  The record does not reflect, however, that the Purnells took any steps to insure that Shaffer would disclose their ownership or would not act on their behalf beyond the sale of the horse alone.  The record only reflects that the Purnells admit and Shaffer testified that he was acting and intended to act on their behalf at least until Leier gave him the check, that the contract for the sale of the horse including training, shoeing, vet services, and delivery was negotiated and agreed to by Shaffer before Leier gave Shaffer the check, that the Purnells maintained no contact with Shaffer regarding the horse while the horse was for sale, that is, from the fall of 2001 until the horse died in March of 2002, and that it was not until the horse died and Leier began demanding the return of the money paid for the horse that the Purnells became aware of the sale of the horse and inquired into the sale.

Additionally, however, there is no evidence of what the ordinary care standard is for actions of a principal in the same or similar circumstances as the Purnells.  The summary judgment evidence does not reflect what a horse owner selling a horse through a sales agent who is in the business of boarding and training horses and who boarded the horse to be sold while the horse was for sale would have done to insure that the sales agent knew the limits of his authority and did not act beyond the scope of his authority, so that no reasonably prudent person would believe that the sales agent had the authority to bind the horse owner to a terms of the contract for the sale of the horse that required training, shoeing, vet services, and delivery.  Therefore, issues of material fact exist regarding whether the Purnells’ failure to insure that Shaffer knew the scope of his authority, and that their ownership was disclosed, as well as their failure to maintain any communication with Shaffer regarding the horse while it was for sale, and Shaffer’s failure to disclose his lack of ownership is evidence of such a lack of ordinary care that a reasonably prudent person would believe that Shaffer had the authority not only to bind the Purnells to the sale of the horse but to the training, shoeing, vet services, and delivery terms of the contract as well.
(footnote: 16)
 Consequently, our review of the record under the proper standard
(footnote: 17) shows that Shaffer had actual authority to sell the horse, but issues of material fact exist regarding whether he had apparent authority to bind the Purnells to the training, shoeing, vet services, and delivery as required under the terms of the contact.  Therefore, issues of material fact exist regarding whether the failure to deliver the horse to Leier as required under the contract is a breach by the Purnells of the contract.  Thus, the trial court erred to the extent that it held that, as a matter of law, the Purnells did not breach the contract.

By holding that delivery was an actual negotiated term of the contract, regardless of whether the Purnells are bound by that term, we do not reach Leier’s statutory issues regarding risk of loss.
(footnote: 18)
Money Had and Received

Also, in her first general issue, Leier argues that the trial court erred to the extent that it held the cause of action for money had and received is not a viable cause of action.  We agree.  Without citing any authority, the Purnells argued to the trial court and this court that money had and received “is not a viable cause of action under Texas law as such cause has been usurped by the UCC.”  The implied contract action for money had and received, however, survived the UCC’s adoption.
(footnote: 19)  An action for money had and received will lie where (1) a person has obtained money from another by fraud, duress, or undue advantage; (2) a person has paid money in consideration of an act to be done by another and the act is not performed, whether the defendant is unwilling or unable to perform; (3) the action is to recover money received on consideration that has failed in whole or in part; or (4) there is a surplus arising on the sale of the security for a debt.
(footnote: 20)
 As set forth above, Leier performed under the contract, and issues of material fact exist regarding whether the Purnells breached.  Thus, because Leier performed—she paid the $11,000 contract price—and issues of material fact exist regarding whether the Purnells breached the contract by failing to deliver the horse to Leier at Nationals, there are also issues of material fact regarding whether the Purnells hold money paid by Leier in consideration of an act that was not performed.  Consequently, our review of the record under the proper standard
(footnote: 21) shows that Leier’s cause of action for money had and received is proper, and the trial court erred to the extent that it held otherwise.  We sustain Leier’s first issue.

Because we hold that issues of material fact exist regarding both of Leier’s causes of action, the trial court did not err by denying her motion for summary judgment.  We overrule Leier’s second issue.  Furthermore, because we do not reach Leier’s statutory issues regarding risk of loss, we do not reach her third issue.
(footnote: 22)
Conclusion

Having held that issues of material fact exist regarding Leier’s breach of contract and money had and received causes of action, we reverse the trial court’s judgment and remand for trial.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED: December 9, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Kay v. N. Tex. Rod & Custom
, 109 S.W.3d 924, 927 (Tex. App.—Dallas 2003, no pet.).

3:
Hubbard v. Shankle
, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied
)
.

4:
Fed. Sign v. Tex. S. Univ.
, 951 S.W.2d 401, 408–09 (Tex. 1997), 
superseded by statute on other grounds as stated in Gen. Servs. Com’m
 v. 
Little-Tex Insulation Co.
, 39 S.W.3d 531, 593 (Tex. 2001).

5:
Hubbard
, 138 S.W.3d at 481
.

6:
Suarez v. Jordan
, 35 S.W.3d 268, 272–73 (Tex. App.—Houston [14th Dist.] 2000, no pet.); 
Currey v. Lone Star Steel Co.
, 676 S.W.2d 205, 209 (Tex. App.—Fort Worth 1984, no writ).

7:
Suarez
, 35 S.W.3d at 273; 
Currey
, 676 S.W.2d at 209–10.

8:
Currey
, 676 S.W.2d at 209.

9:
Spring Garden 79U
,
 Inc. v. Stewart Title Co.
, 874 S.W.2d 945, 948 (Tex. App.—Houston [1st Dist.] 1994, no writ)
.

10:
Latch v. Gratty Inc.
, 107 S.W.3d 543, 546 (Tex. 2003).

11:
Id
.

12:
Id
.

13:
See
 
Suarez
, 35 S.W.3d at 273.

14:
Currey
, 676 S.W.2d at 210.

15:
Suarez
, 35 S.W.3d at 273; 
Currey
, 676 S.W.2d at 210.

16:
See
 
Suarez
, 35 S.W.3d at 273; 
Currey
, 676 S.W.2d at 210.

17:
See
 Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant
,
 
73 S.W.3d 211, 215 (Tex. 2002);
 Dow Chem. Co. v. Bright
, 89 S.W.3d 602, 605 (Tex. 2002); 
Rhone-Poulenc
,
 Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999).

18:
See
 
Tex. R. App. P.
 47.1.

19:
Stone v. First City Bank of Plano
,
 N.A.
, 794 S.W.2d 537, 543 (Tex. App.—Dallas 1990, writ denied); 64 
Tex Jur. 3d
 
Restitution and Constructive Trusts
 § 6 (2003).

20:
64 
Tex. Jur. 3d
 
Restitution and Constructive Trusts
 § 6.

21:
See
 
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co.
, 73 S.W.3d at 215;
 Dow Chem. Co.
, 89 S.W.3d at 605; 
Rhone-Poulenc
, 997 S.W.2d at 223.

22:
See
 
Tex. R. App. P.
 47.1.