COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-039-CV
  
  
CAMMY L. LEIER                                                                   APPELLANT
  
V.
  
JOHN PURNELL, HELGA PURNELL,                                           APPELLEES
AND STEPHANIE A. PURNELL
  
  
------------
 
FROM THE 211TH DISTRICT COURT OF DENTON 
COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Cammy Leier filed this suit against Appellees John Purnell, Helga Purnell, and 
Stephanie A. Purnell for breach of contract and money had and received after the 
horse that Leier contracted to purchase from the Purnells died.  Both Leier 
and the Purnells filed motions for summary judgment on all of Leier’s 
claims.  The trial court granted the Purnells’ motion for summary 
judgment and denied Leier’s motion for summary judgment.  In three 
general issues, Leier now argues that the trial court erred by granting the 
Purnells’ motion and denying hers.  Because we hold that issues of 
material fact exist regarding whether the Purnells breached the contract and 
whether they hold money that belongs to Leier, we reverse the trial court’s 
judgment and remand for trial.
Background 
Facts
        Leier, 
interested in showing horses, began searching for a horse to purchase.  
Leier found a horse, an Appaloosa mare named Zippity Day, that she was 
interested in purchasing on Mark Shaffer Show Horses‘ website.  Leier, a 
Nevada resident, traveled to Shaffer’s ranch in Texas to look at Zippity Day, 
which Shaffer showed her.  After riding the horse, Leier wanted some time 
to think about the purchase, so she left.
        The 
next morning, Leier returned to Shaffer’s ranch to discuss purchasing the 
horse.  Shaffer initially told Leier that the horse was $12,500, and Leier 
countered with an offer of $8,500.  Shaffer then told Leier that $10,000 
seemed to be the meeting point. Leier intended to take the horse with her that 
day.  Shaffer, however, told her that if she wrote a check for the horse, 
she could not take the horse until her check cleared and also told her that the 
horse really was not ready to show yet.  They continued to negotiate.  
Shaffer told Leier that if she left the horse for additional training, the horse 
would be worth three times more by the time of the national competition 
(“Nationals”).  He told her that for $11,000, she would get the horse, 
shoeing, vet services, and training, and the horse would be ready to show at 
Nationals, where he would deliver the horse to her.  Leier agreed to 
purchase the horse, training, shoeing, vet services, and delivery of the horse 
at Nationals for $11,000.  Then she asked Shaffer whose name to make the 
check out to, and he told her to make the check out to him.  Leier wrote 
the $11,000 check payable to Shaffer and handed it to him.  No written 
contract was made, and no transfer papers or title documents were given to 
Leier.  Shaffer did not tell Leier that he was not the owner of the horse.
        While 
the horse was being trained at Shaffer’s ranch, Leier continued to ask Shaffer 
for transfer of ownership papers, but Shaffer never provided them to her.  
About five weeks after Leier gave Shaffer the check, the horse died.  After 
the horse died, Leier found out that the Purnells, not Shaffer, owned the 
horse.  Similarly, the Purnells did not know the horse had been sold and 
did not receive any money from Shaffer from the sale until after the horse had 
died.
        After 
the horse’s death, Leier asked for her money back because the horse could no 
longer be delivered to her.  Shaffer refused because he had given the money 
to the Purnells, and the Purnells refused, claiming that Leier had possession of 
the horse when it died.  Leier then sued Shaffer and the Purnells for 
breach of contract and money had and received.  The Purnells filed a motion 
for summary judgment on all of Leier’s claims against them.  Leier filed 
a combined response and motion for summary judgment.  The trial court 
granted the Purnells’ motion for summary judgment and denied Leier’s motion 
for summary judgment.  Leier now brings three general issues on appeal, 
arguing that the trial court erred by granting the Purnells’ motion for 
summary judgment and by denying hers.
Breach of 
Contract
        In 
her first general issue, Leier argues that the trial court erred by granting the 
Purnells’ summary judgment to the extent that it held, as a matter of law, 
that the Purnells did not breach the contract.  We agree.  To 
establish a breach of contract, the plaintiff must prove that (1) a valid 
contract exists; (2) the plaintiff performed or tendered performance; (3) the 
defendant breached the contract; and (4) the plaintiff was damaged by the 
breach.[2]  Under Texas law, the requirements of 
a valid contract are: (1) an offer; (2) an acceptance in strict compliance with 
the terms of the offer; (3) a meeting of the minds; (4) each party’s consent 
to the terms; and (5) execution and delivery of the contract with the intent 
that it be mutual and binding.[3]  Consideration 
is also a fundamental element of a valid contract.[4]  
The elements of written and oral contracts are the same and must be present for 
a contract to be binding.[5]
        In 
this case, the contract at issue was an oral contract, entered into by Leier, 
the buyer, and Shaffer, the sales agent of the Purnells, the sellers.  It 
is a basic rule of agency that an agent may not bind his principal in the 
absence of either actual or apparent authority to do so.[6]  
In general, actual authority means authority that the principal (1) 
intentionally conferred upon the agent; (2) intentionally allowed the agent to 
believe that he possessed; or (3) by want of due care allowed the agent to 
believe that he possessed.[7] Thus, the creation of 
actual authority is dependent on manifestations, written or oral, or conduct by 
the principal communicated to the agent.[8]  
“Implied” actual authority exists only as an adjunct to express actual 
authority because implied authority is that which is proper, usual, and 
necessary to the exercise of the authority that the principal expressly 
delegates.[9] Additionally, an agent need not 
disclose his or her principal’s identity to act on behalf of that principal.[10]  Rather, an agent who contracts on behalf of an 
undisclosed principal is individually liable on the contract.[11]  
The undisclosed principal, however, may also be bound to the contract made if 
the agent, acting with authority, was intending to act on behalf of the 
principal.[12]
        Because 
the Purnells concede that Shaffer was their sales agent, Shaffer had actual 
authority to bind the Purnells contractually to the sale of the horse.[13]  Furthermore, the Purnells admit that Shaffer was 
their agent, and Shaffer testified that he acted as their agent, until Leier 
handed Shaffer the $11,000 check.
        The 
summary judgment evidence shows that Shaffer offered the sale of the horse, 
training, vet services, shoeing, and delivery of the horse to Leier at Nationals 
for $11,000.  Leier accepted and then presented Shaffer with an $11,000 
check made out to him.  Shaffer later sent an invoice to Leier showing that 
Leier purchased the horse, training, shoeing, and vet services at a total price 
of $11,000.  Thus, the evidence shows that the terms of the contract were 
the sale of the horse, training, shoeing, vet services, and delivery for 
$11,000.  All the terms were negotiated and agreed to by Shaffer and Leier 
before Leier gave Shaffer the check.
        The 
Purnells, however, citing no authority to support their argument, contend that 
they “are not liable for all Shaffer’s acts and omissions within the 
apparent scope of his authority.  Particularly, the Purnells were never a 
party to any agreement about delivery of the horse.  In fact, Leier 
believed the horse belonged to Shaffer, so there would not even be any apparent 
authority.”  Thus, they allege that, as a matter of law, there were two 
contracts—a contract for the purchase of the horse and a separate contract 
where Leier then chose to leave the horse with Shaffer for training, shoeing, 
vet services, and delivery.  We disagree. In this case, issues of material 
fact exist regarding whether Shaffer had apparent authority to bind the Purnells 
to any terms of the contract other than the sale of the horse alone, that is, to 
the training, shoeing, vet services, and delivery.
        First, 
there is no evidence in the summary judgment record that there were two 
contracts.  As set forth above, the evidence shows that multiple terms were 
negotiated to form one contract requiring one total payment, which was made in 
full.  There are issues of material fact, however, regarding whether the 
Purnells are bound by the terms in the contract.
        Second, 
apparent authority is based on the doctrine of estoppel.[14]  
One seeking to charge the principal through apparent authority of his agent must 
establish that the principal knowingly permitted an agent to hold himself out as 
having authority or that the principal’s actions lacked such ordinary care as 
to clothe an agent with indicia of authority, thus leading a reasonably prudent 
person to believe that the agent has the authority she purports to exercise.[15]
        Although 
there is no evidence that the Purnells knowingly permitted Shaffer to hold 
himself out as having authority that was not expressly granted, the summary 
judgment evidence raises issues of material fact regarding whether the 
Purnells’ actions lacked such ordinary care as to clothe Shaffer with indicia 
of authority to bind the Purnells to the training, shoeing, vet services, and 
delivery.  The evidence shows that Leier believed that Shaffer was the 
owner of the horse and therefore had the authority to bind the owner to all the 
terms of the contract for sale of the horse, which included the training, 
shoeing, vet services, and delivery.  The evidence shows that Shaffer did 
not disclose to Leier that he was not the owner of the horse.  The record 
does not reflect, however, that the Purnells took any steps to insure that 
Shaffer would disclose their ownership or would not act on their behalf beyond 
the sale of the horse alone.  The record only reflects that the Purnells 
admit and Shaffer testified that he was acting and intended to act on their 
behalf at least until Leier gave him the check, that the contract for the sale 
of the horse including training, shoeing, vet services, and delivery was 
negotiated and agreed to by Shaffer before Leier gave Shaffer the check, that 
the Purnells maintained no contact with Shaffer regarding the horse while the 
horse was for sale, that is, from the fall of 2001 until the horse died in March 
of 2002, and that it was not until the horse died and Leier began demanding the 
return of the money paid for the horse that the Purnells became aware of the 
sale of the horse and inquired into the sale.
        Additionally, 
however, there is no evidence of what the ordinary care standard is for actions 
of a principal in the same or similar circumstances as the Purnells.  The 
summary judgment evidence does not reflect what a horse owner selling a horse 
through a sales agent who is in the business of boarding and training horses and 
who boarded the horse to be sold while the horse was for sale would have done to 
insure that the sales agent knew the limits of his authority and did not act 
beyond the scope of his authority, so that no reasonably prudent person would 
believe that the sales agent had the authority to bind the horse owner to a 
terms of the contract for the sale of the horse that required training, shoeing, 
vet services, and delivery.  Therefore, issues of material fact exist 
regarding whether the Purnells’ failure to insure that Shaffer knew the scope 
of his authority, and that their ownership was disclosed, as well as their 
failure to maintain any communication with Shaffer regarding the horse while it 
was for sale, and Shaffer’s failure to disclose his lack of ownership is 
evidence of such a lack of ordinary care that a reasonably prudent person would 
believe that Shaffer had the authority not only to bind the Purnells to the sale 
of the horse but to the training, shoeing, vet services, and delivery terms of 
the contract as well.[16]
        Consequently, 
our review of the record under the proper standard[17] 
shows that Shaffer had actual authority to sell the horse, but issues of 
material fact exist regarding whether he had apparent authority to bind the 
Purnells to the training, shoeing, vet services, and delivery as required under 
the terms of the contact.  Therefore, issues of material fact exist 
regarding whether the failure to deliver the horse to Leier as required under 
the contract is a breach by the Purnells of the contract.  Thus, the trial 
court erred to the extent that it held that, as a matter of law, the Purnells 
did not breach the contract.
        By 
holding that delivery was an actual negotiated term of the contract, regardless 
of whether the Purnells are bound by that term, we do not reach Leier’s 
statutory issues regarding risk of loss.[18]
Money Had and 
Received
        Also, 
in her first general issue, Leier argues that the trial court erred to the 
extent that it held the cause of action for money had and received is not a 
viable cause of action.  We agree.  Without citing any authority, the 
Purnells argued to the trial court and this court that money had and received 
“is not a viable cause of action under Texas law as such cause has been 
usurped by the UCC.”  The implied contract action for money had and 
received, however, survived the UCC’s adoption.[19]  
An action for money had and received will lie where (1) a person has obtained 
money from another by fraud, duress, or undue advantage; (2) a person has paid 
money in consideration of an act to be done by another and the act is not 
performed, whether the defendant is unwilling or unable to perform; (3) the 
action is to recover money received on consideration that has failed in whole or 
in part; or (4) there is a surplus arising on the sale of the security for a 
debt.[20]
        As 
set forth above, Leier performed under the contract, and issues of material fact 
exist regarding whether the Purnells breached.  Thus, because Leier 
performed—she paid the $11,000 contract price—and issues of material fact 
exist regarding whether the Purnells breached the contract by failing to deliver 
the horse to Leier at Nationals, there are also issues of material fact 
regarding whether the Purnells hold money paid by Leier in consideration of an 
act that was not performed.  Consequently, our review of the record under 
the proper standard[21] shows that Leier’s cause of 
action for money had and received is proper, and the trial court erred to the 
extent that it held otherwise.  We sustain Leier’s first issue.
        Because 
we hold that issues of material fact exist regarding both of Leier’s causes of 
action, the trial court did not err by denying her motion for summary 
judgment.  We overrule Leier’s second issue.  Furthermore, because 
we do not reach Leier’s statutory issues regarding risk of loss, we do not 
reach her third issue.[22]
Conclusion
        Having 
held that issues of material fact exist regarding Leier’s breach of contract 
and money had and received causes of action, we reverse the trial court’s 
judgment and remand for trial.
 
 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
 
PANEL A:   CAYCE, 
C.J.; DAUPHINOT and GARDNER, JJ.

  
DELIVERED: December 9, 2004


NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  Kay 
v. N. Tex. Rod & Custom, 109 S.W.3d 924, 927 (Tex. App.—Dallas 2003, 
no pet.).
3.  Hubbard 
v. Shankle, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied).
4.  Fed. 
Sign v. Tex. S. Univ., 951 S.W.2d 401, 408–09 (Tex. 1997), superseded 
by statute on other grounds as stated in Gen. Servs. Com’m v. Little-Tex 
Insulation Co., 39 S.W.3d 531, 593 (Tex. 2001).
5.  Hubbard, 
138 S.W.3d at 481.
6.  Suarez 
v. Jordan, 35 S.W.3d 268, 272–73 (Tex. App.—Houston [14th Dist.] 2000, 
no pet.); Currey v. Lone Star Steel Co., 676 S.W.2d 205, 209 (Tex. 
App.—Fort Worth 1984, no writ).
7.  Suarez, 
35 S.W.3d at 273; Currey, 676 S.W.2d at 209–10.
8.  Currey, 
676 S.W.2d at 209.
9.  Spring 
Garden 79U, Inc. v. Stewart Title Co., 874 S.W.2d 945, 948 (Tex. 
App.—Houston [1st Dist.] 1994, no writ).
10.  
Latch v. Gratty Inc., 107 S.W.3d 543, 546 (Tex. 2003).
11.  
Id.
12.  
Id.
13.  
See Suarez, 35 S.W.3d at 273.
14.  
Currey, 676 S.W.2d at 210.
15.  
Suarez, 35 S.W.3d at 273; Currey, 676 S.W.2d at 210.
16.  
See Suarez, 35 S.W.3d at 273; Currey, 676 S.W.2d at 210.
17.  
See Tex. R. Civ. P. 
166a(c); S.W. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Dow 
Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex. 2002); Rhone-Poulenc, 
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).
18.  
See Tex. R. App. P. 47.1.
19.  
Stone v. First City Bank of Plano, N.A., 794 S.W.2d 537, 543 (Tex. 
App.—Dallas 1990, writ denied); 64 Tex 
Jur. 3d Restitution and Constructive Trusts § 6 (2003).
20.  
64 Tex. Jur. 3d Restitution and 
Constructive Trusts § 6.
21.  
See Tex. R. Civ. P. 
166a(c); S.W. Elec. Power Co., 73 S.W.3d at 215; Dow Chem. Co., 89 
S.W.3d at 605; Rhone-Poulenc, 997 S.W.2d at 223.
22.  
See Tex. R. App. P. 47.1.