COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-336-CV

 

ARGYLE INDEPENDENT SCHOOL DISTRICT,              APPELLANT/APPELLEE

BY
AND THROUGH ITS BOARD OF TRUSTEES

 

                                                   V.

 

JEFFREY J. AND JANICE WOLF,                          APPELLEES/APPELLANTS

ON
BEHALF OF THEIR MINOR CHILDREN,

AND
ALLEN AND VICKI ZIMMERMAN, ON

BEHALF
OF THEIR MINOR CHILDREN

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction








This is an appeal from the
trial court=s imposition
of a temporary injunction against appellant and cross-appellee Argyle
Independent School District (AISD).  The
injunction enjoins AISD from prohibiting the minor children of appellees and
cross-appellants Jeffrey J. and Janice Wolf and Allen and Vicki Zimmerman
(appellees)Cwho do not
live within AISD boundariesCfrom attending AISD schools during the 2006-07 school year unless
appellees pay tuition of $6,487.50 per child, and from retaliating against
those children because of appellees= filing of the underlying suit. 
In three issues, AISD contends that the trial court abused its
discretion by entering the temporary injunction because appellees presented no
evidence of a probable right to relief on any of their causes of action;
because appellees presented no evidence that they faced a probable, imminent,
and irreparable injury absent an injunction; and because the evidence showed that
appellees are not entitled to equitable relief in that they have unclean
hands.  In one cross-issue, appellees
claim that the trial court abused its discretion by declining to enjoin the
AISD Board of Trustees from interfering with appellees= appeal of a Denton Independent School District (DISD) decision
declining to detach the street on which appellees live from DISD=s boundaries.  That appeal is
pending before the Texas Commissioner of Education.[1]  We reverse and remand.

 

 








Background

Appellees Jeffrey and Janice
Wolf moved to the Estates at Tour 18 subdivision in Flower Mound in May 2002,
and appellees Allen and Vicki Zimmerman moved there in 2003.  Both families purchased homes on Firestone
Drive.  The Wolfs were told by their
realtor and the developer of the subdivision that the entire subdivision,
including their home on Firestone Drive, was included within the boundaries of
AISD.  One reason the Wolfs and
Zimmermans moved to Firestone Drive was so that their children could attend
AISD schools. 








Kathy Jessen, an employee in
the office of the elementary school that the children living in Tour 18
attended, told Janice that the Wolfs= house was located in AISD.[2]  Janice then enrolled her three children in
AISD schools.  The Wolf children have
been attending AISD schools since the 2002-03 school year.  The Zimmermans were told the same thing and
also enrolled their children in AISD schools.[3]  Their children have been attending AISD
schools since the 2003-04 school year. 
They never registered their children as transfer students, nor were they
told they needed to do so.  Moreover,
they were never charged tuition for their children to attend AISD schools.








In September 2005, AISD
Superintendent Carolyn Pierel received a complaint that children living on
Firestone Drive were allowed to attend AISD schools for free even though the
houses on one side of that street were located in DISD and the residents paid
taxes to DISD, not AISD.[4]  In response to the complaint, Superintendent
Pierel confirmed that one side of Firestone Drive was located in DISD instead
of AISD and determined which children living on Firestone Drive were attending
AISD.  She then contacted Miriam Pierce,
another resident of Firestone Drive whose daughter had been attending AISD
schools for several years.  As a result
of that call, Pierce circulated a petition to Firestone Drive residents asking
DISD to release Firestone Drive from its boundaries and asking AISD to annex
Firestone Drive.[5]  The Wolfs and Zimmermans signed the
petition.  On April 17, 2006, the AISD
Board of Trustees voted to approve the petition to annex Firestone Drive into
the district.  DISD had not yet voted on
the residents= request to
detach the street from its boundaries.  

In the spring of 2006, before
the 2005-06 school year ended, appellees preregistered their children with AISD
for the 2006-07 school year.  On the
Affidavit of Residency forms, Janice listed AArgyle@ in response
to the question, @School District
you reside in.@  Vicki left the answer blank on the forms for
two of her children, but she wrote in AArgyle@ on the form
for her third child.  AISD did not demand
tuition at the time, nor did it require appellees to register their children as
transfer students.  Superintendent Pierel
admitted that AISD accepted the children=s preregistration.








The next month, DISD rejected
the Firestone Drive residents= transfer petition on May 16, 2006. 
The Wolfs and Zimmermans appealed that decision to the Texas
Commissioner of Education.








On June 19, 2006, the AISD
Board passed a resolution to allow children of the then-current residents of
Firestone Drive to attend AISD schools as transfer students so long as they
paid tuition.[6]  Although the agenda for the meeting had been
posted at the administration building, the wrong agenda had been posted on AISD=s website, and the Wolfs and Zimmermans did not know about the meeting
until the day it was held.  The Wolfs
attended the meeting.          On July 26, 2006, nineteen days before
school was to begin on August 14, Superintendent Pierel sent appellees letters
stating that tuition for the 2006-07 school year would be $6,487.50 per child,
requesting payment in full before the first day of school, and enclosing a
transfer application.  The Wolfs were out
of town at the time.  Appellees did not
complete the transfer paperwork or pay tuition; instead, they filed suit Aseeking to prevent [AISD] from treating them as non-residents and
charging them tuition.@  Appellees sought a declaratory judgment as
well as temporary and permanent injunctive relief.

The trial court granted
appellees= request for
a TRO on August 10, 2006, enjoining AISD from Adenying [appellees=] minor children public education by wrongfully requiring payment of
tuition and/or by requiring [appellees=] minor children to be enrolled as transfer students prior to
attending school commencing on August 14, 2006.@  After an evidentiary hearing
held in August 2006, the Wolfs and the Zimmermans agreed to deposit the
requested tuition into the court registry in monthly installments, and the
trial court entered a temporary injunction on September 11, 2006 enjoining AISD
from (1) denying public education and services to appellees= children during the 2006-07 school year and (2) retaliating against
the children because of the filing of the suit.[7]

Standard of Review








To be entitled to a temporary
injunction, the applicant must plead a cause of action and show a probable
right to recover on that cause of action and a probable, imminent, and
irreparable injury in the interim.  Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Fox v. Tropical
Warehouses, Inc., 121 S.W.3d 853, 857 (Tex. App.CFort Worth 2003, no pet.).  A
probable right of recovery is shown by alleging a cause of action and
presenting evidence tending to sustain it. 
Fox, 121 S.W.3d at 857; Miller Paper Co. v. Roberts Paper Co.,
901 S.W.2d 593, 597 (Tex. App.CAmarillo 1995, no writ).  An
injury is irreparable if damages would not adequately compensate the injured
party or if they cannot be measured by any certain pecuniary standard.  Butnaru, 84 S.W.3d at 204; Fox;
121 S.W.3d at 857; see T‑N‑T Motorsports, Inc. v. Hennessey
Motorsports, Inc., 965 S.W.2d 18, 24 (Tex. App.CHouston [1st Dist.] 1998, pet. dism=d).

The purpose of a temporary
injunction is to preserve the status quo until a trial on the merits.  Butnaru, 84 S.W.3d at 204; Walling
v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993); Fox, 121 S.W.3d at
857.  AStatus quo is defined as >the last, actual, peaceable, noncontested status which preceded the
pending controversy.=@  Universal Health Servs.,
Inc. v. Thompson, 24 S.W.3d 570, 577 (Tex. App.CAustin 2000, no pet.) (quoting Transp. Co. v. Robertson Transps.,
Inc., 152 Tex. 551, 261 S.W.2d 549, 553‑54 (1953)).








In an appeal from an order
granting or denying a temporary injunction, the scope of review is restricted
to the validity of the order granting or denying relief.  Walling, 863 S.W.2d at 58; Fox,
121 S.W.3d at 857; Thompson, 24 S.W.3d at 576.  Whether to grant or deny a request for a
temporary injunction is within the trial court=s discretion, and we will not reverse its decision absent an abuse of
discretion.  Butnaru, 84 S.W.3d at
204; Walling, 863 S.W.2d at 58; Fox, 121 S.W.3d at 857.  Accordingly, when reviewing such a decision,
we must view the evidence in the light most favorable to the trial court=s order, indulging every reasonable inference in its favor, and
determine whether the order was so arbitrary that it exceeds the bounds of
reasonable discretion.  Fox, 121
S.W.3d at 857; Thompson, 24 S.W.3d at 576; CRC‑Evans Pipeline
Int=l, Inc. v.
Myers, 927 S.W.2d 259, 262 (Tex. App.CHouston [1st Dist.] 1996, no writ). 
A trial court does not abuse its discretion if it bases its decision on
conflicting evidence and evidence in the record reasonably supports the trial
court=s decision.  Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978); Fox, 121 S.W.3d at 857; Myers,
927 S.W.2d at 262.

Probable Right to Relief








In its first
issue, AISD contends that appellees presented no evidence of a probable right
to relief on any of their claims. 
Appellees primarily sought (1) both a temporary and permanent injunction
prohibiting AISD from treating their children as transfer students, charging
them tuition to attend AISD schools, and denying them admission to AISD schools
unless they paid tuition and (2) a declaratory judgment asking the trial court
to declare that AISD cannot treat their children as transfer students, charge
tuition, or otherwise deny their children Afree public education and services in AISD.@  They claim that they are third
party beneficiaries to a contract between AISD and the developer of Tour 18
that permits the children of Firestone Drive residents to attend AISD without
tuition.[8]  They also claim that, as a result of this
alleged contract and other actions by the AISD Board, AISD is estopped from
denying that it has agreed to allow the children of Firestone Drive to attend
AISD schools free of charge and that AISD would be unjustly enriched by
charging them tuition for their children to attend AISD schools.  Appellees further contend that they are
entitled to relief because AISD violated the Open Meetings Act, Aother Texas statutes,@[9] and their right to procedural due process.








A party seeking a temporary
injunction must have at least one valid legal theory to support a probable
right to recover.  Marketshare
Telecom, L.L.C. v. Ericsson, Inc., 198 S.W.3d 908, 922 (Tex. App.CDallas 2006, no pet.); Brammer v. KB Home Lone Star, L.P., 114
S.W.3d 101, 110 (Tex. App.CAustin 2003, no pet.). 
Accordingly, we will review each of appellees= theories to determine whether they demonstrated a probable right to
recover on their claims for declaratory and injunctive relief.  See Marketshare Telecom, 198 S.W.3d at
922.

Contractual and Quasi-contractual
Theories

Appellees contend that they
are third party beneficiaries of a contract between AISD and Gary VanTrease,
the developer of Tour 18, as evidenced by an October 20, 1997 letter from
then-superintendent Mickey Koonce to Van Trease and as later ratified by the
AISD Board.  AISD contends that no valid
contract was formed between AISD and VanTrease, that Koonce did not have
authority to bind AISD, and that even if a valid contract existed, appellees
were not intended third party beneficiaries of that contract. 

The letter from Koonce to
VanTrease reads as follows:

I have enclosed a copy of the minutes of the
Argyle ISD Board of Trustees meeting in which you asked that the students
living on the one street of The Estates at Tour 18 which is in the Denton ISD
to be allowed to attend the Argyle ISD. 
I have also enclosed a copy of the transfer policy.  

 

After reviewing the policy, the Board did not
need to take action.  However, the Board
was in agreement that with our current policy, these student [sic] could
be accepted into the district with no tuition charge.  [Emphasis added.]

 








The copy of the letter that AISD provided to
appellees[10]
did not have any minutes or transfer policy attached.  Superintendent Pierel testified that she
could not find a copy of the letter in AISD=s records, but that she obtained a copy from DISD.

Appellees introduced minutes
from a June 9, 1997 AISD Board meeting stating that A[d]uring Administration comments, Dr. Koonce informed the Board that
it had been discovered that one street in the Tour 18 development was in the
Denton ISD.@  They also introduced minutes from an August
18, 1997 meeting stating that 

Mr.
Gary Van Trease, resident and builder in Tour 18 Development, made a
presentation to the Board in reference to the one street of this housing
addition which is in the Denton ISD and not the Argyle ISD.  The Board took no action at this time.  Dr. Koonce was asked to investigate any legal
ramifications should these students be allowed to attend the Argyle ISD when
the policy states that we do not accept transfers.  [Emphasis added.]

 








Minutes from the September 15, 1997 meeting state
that A[n]o action was taken on altering the transfer policy.@  And, finally, the second page[11]
of minutes from an August 28, 1998 special meeting state, AJim Wallace asked about the student who lives on the Denton ISD street
of Tour 18.  The Board asked if our
policy needed to be changed.@

The fact that a person might
receive an incidental benefit from a contract to which he or she is not a party
does not give that person a right of action to enforce the contract.  MCI Telecomms. Corp. v. Tex. Util. Elec. Co.,
995 S.W.2d 647, 650‑51 (Tex. 1999).  A third party may recover on a contract made
between other parties only if the parties entered into the contract directly
for the third party=s
benefit.  Id.  To qualify as one for whose benefit the
contract was made, the third party must show that she is either a donee or
creditor beneficiary of, and not one who is benefitted only incidentally by the
performance of, the contract.  Id.  In determining whether a third party can
enforce a contract, the intention of the contracting parties is
controlling.  Id.  A court will not create a third‑party‑beneficiary
contract by implication.  Id.  The intention to contract or confer a direct
benefit to a third party must be clearly and fully spelled out, or enforcement
by the third party must be denied.  Id.  Consequently, a presumption exists that
parties contracted for themselves unless it clearly appears that they intended
a third party to benefit from the contract. 
Id.













Here, there is no indication
that the Board authorized Koonce to enter into a contract with VanTrease.  A school district may act only by and through
its board of trustees.  Tex. Educ. Code Ann. ' 11.151 (Vernon 2006); Royse ISD v. Reinhardt, 159 S.W. 1010,
1011 (Tex. Civ. App.CDallas 1913,
writ ref=d).  There is no evidence that
the Board authorized the letter, or that it even knew of its contents.[12]  See Thermo Prods. Co. v. Chilton ISD,
647 S.W.2d 726, 732 (Tex. App.CWaco 1983, writ ref=d n.r.e.) (A[F]or the
acts of the governmental body to be valid, it must act as a body.@).  The evidence shows only that
the Board was informed in 1997 that part of Firestone Drive was located in
DISD, that AISD=s policy at
that time was not to accept transfer students, that the Board took no action to
change the policy, and that the Board authorized Koonce only to investigate the
legal ramifications of letting children on Firestone Drive attend AISD for
free.  There is no indication that the
Board ever authorized Koonce to send the 1997 letter.[13]

Appellees contend that even
if Koonce was not authorized to send such a letter, he had apparent authority
to bind the school district.  Apparent
authority arises through acts of participation, knowledge, or acquiescence by
the principal that clothe the agent with the indicia of apparent
authority.  Ins. Co. of N. Am. v.
Morris, 981 S.W.2d 667, 672 (Tex. 1998); Tex. Cityview Care Ctr., L.P.
v. Fryer, No. 02-06-00373-CV, 2007 WL 1502088, at *5 (Tex. App.CFort Worth May 24, 2007, no pet. h.). 
Certain limitations apply in determining whether apparent authority
exists.  Tex. Cityview Care Ctr.,
2007 WL 1502088, at *5; Lifshutz v. Lifshutz, 199 S.W.3d 9, 22 (Tex.
App.CSan Antonio 2006, pets. denied); Suarez v. Jordan, 35 S.W.3d
268, 272 (Tex. App.CHouston
[14th Dist.] 2000, no pet.).  








First, apparent authority is
determined by looking to the acts of the principal and ascertaining whether
those acts would lead a reasonably prudent person using diligence and
discretion to suppose the agent had the authority to act on behalf of the principal.  Tex. Cityview Care Ctr., 2007 WL
1502088, at *5; Lifshutz, 199 S.W.3d at 22; Suarez, 35 S.W.3d at
272.  Only the conduct of the principal
may be considered; representations made by the agent of her authority have no
effect.  Tex. Cityview Care Ctr.,
2007 WL 1502088, at *5; Lifshutz, 199 S.W.3d at 22-23; Suarez, 35
S.W.3d at 272.  Second, the principal
must either have affirmatively held the agent out as possessing the authority,
or the principal must have knowingly and voluntarily permitted the agent to act
in an unauthorized manner.  Tex.
Cityview Care Ctr., 2007 WL 1502088, at *5; Lifshutz, 199 S.W.3d at
23; Suarez, 35 S.W.3d at 272. 
Finally, a party dealing with an agent must ascertain both the fact and
the scope of the agent=s authority,
and if the party deals with the agent without having made such a determination,
she does so at her own risk.  Tex.
Cityview Care Ctr., 2007 WL 1502088, at *5; Lifshutz, 199 S.W.3d at
23; Suarez, 35 S.W.3d at 272.








Appellees contend that the
Board=s failure to revoke the 1997 letter shows that Koonce had apparent
authority to bind AISD to accept Firestone Drive residents= children into the district without registering as transfer students
or paying tuition.  But there is no
evidence that the Board was aware of Koonce=s letter.  Although
Superintendent Pierel obtained a copy of the letter from DISD in 2006 after
Jeffrey Wolf asked for it pursuant to an open records request, there is no
evidence as to how DISD received a copy or from whom.  Thus, the Board=s failure to revoke the letter cannot work to confer apparent authority
upon Koonce when there is no evidence that the Board knew of its existence in
the first place or that it had authorized Koonce to do anything beyond
investigate the legal ramifications of letting the children attend AISD in
contravention of the then-current transfer policy.

Furthermore, even if the
letter could be considered an authorized, enforceable contract, the language in
the letter indicates only that the students Acould be@ admitted
without payment of tuition based on AISD=s Acurrent
policy.@  Such language could not bind
the district to allow these students to attend its schools tuition-free in
perpetuity, nor could it restrict the district from changing its policy in the
future.

Accordingly, we conclude and
hold that appellees did not offer any evidence that AISD entered into a valid,
authorized contract with VanTrease that was intended to be enforceable by the
residents of Firestone Drive.  See  Tex.
Educ. Code Ann. ' 11.151;
Tex. Cityview Care Ctr., 2007 WL 1502088, at *5-6 (holding arbitration
agreement invalid because there was no evidence that daughter had authority to
bind her mother to agreement).

Estoppel Defense








Appellees asserted in their
pleadings that even if the evidence failed to show the existence of a valid,
enforceable contract by which AISD would be bound to the residents of Firestone
Drive, AISD was estopped from denying the existence of such an agreement based
on AAISD=s
longstanding treatment of [appellees=] children as students of AISD, AISD=s representations to the Firestone [Drive] residents, and AISD=s course of conduct.@  Appellees claim that AISD
should be estopped from treating their children as transfer students or
charging them tuition to attend AISD schools. 
AISD answered that, as a governmental entity performing a governmental
function, it is not subject to estoppel, and that even if estoppel could be
applied to a school district, appellees failed to show a probable right to
recover on their claims for declaratory and permanent injunctive relief based
on an estoppel theory.

Applicable Law








Equitable estoppel is not a
cause of action but may be asserted as a defensive plea to bar a defendant from
raising a particular defense.  Joe v.
Two Thirty Nine Joint Venture, 145 S.W.3d 150, 156 n.1 (Tex. 2004); Collins
v. Allied Pharmacy Mgmt., Inc., 871 S.W.2d 929, 936 (Tex. App.CHouston [14th Dist.] 1994, no writ) (A[E]stoppel is a shield, not a sword.@).  The elements of equitable
estoppel are (1) a false representation or concealment of material facts, (2)
made with knowledge, actual or constructive, of those facts, (3) with the
intention that it should be acted on, (4) to a party without knowledge or means
of obtaining knowledge of the facts, (5) who detrimentally relies on the
representations.  Johnson &
Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 515‑16
(Tex. 1998); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932
(1952).








The supreme court has held
that a governmental entity is not subject to estoppel when it exercises its
governmental powers.  Leeco Gas &
Oil Co. v. Nueces County, 736 S.W.2d 629, 630 (Tex. 1987); City of
Hutchins v. Prasifka, 450 S.W.2d 829, 835 (Tex. 1970); see also City of
White Settlement v. Super Wash, Inc., 198 S.W.3d 770, 773 (Tex. 2006)
(explaining origin of rule with reference to cities).  But the supreme court has Aalso found >authority
for the proposition that a municipality may be estopped in those cases
where justice requires its application, and there is no interference with the
exercise of its governmental functions.=@[14]  Super Wash, 198 S.W.3d
at 774 (emphasis added) (quoting Prasifka, 450 S.W.2d at 836); see
City of San Antonio v. TPLP Office Park Props., 218 S.W.3d 60, 67 (Tex.
2007) (acknowledging exception but holding that facts of case did not warrant
application of exception to actions of municipality); Odessa Tex. Sheriff=s Posse, Inc. v. Ector County, 215 S.W.3d
458, 469-70 (Tex. App.CEastland 2006,
pet. denied) (acknowledging general rule and discussing applicability of
exception); Kelley v. Tex. State Bd. of Dental Exam=rs, 530 S.W.2d 132, 135 (Tex.
Civ. App.CFort Worth 1975,
writ ref=d n.r.e.) (citing Prasifka as authority for exception when
State entity is performing governmental function).  This exception applies Aonly in exceptional cases [in which] the circumstances clearly demand
its application to prevent manifest injustice.@  Super Wash, 198 S.W.3d
at 774 (quoting Prasifka, 450 S.W.2d at 836).  The supreme court has applied the exception
in only two cases in which city officials acted deliberately to induce a party
to act in a way that benefitted the city but prejudiced the party.  Id. at 775.  The court, not the jury, determines whether
the exception applies.  Id. at
774.

Analysis








AISD
contends generally that estoppel cannot be asserted against school districts;
that even if it can be applied against school districts, there is no evidence
of Amanifest injustice@ in this case that would warrant application of the exception to the
general rule that a governmental entity is not subject to estoppel except in Aexceptional cases in which the circumstances clearly demand its
application to prevent manifest injustice@; and, finally, that even if the estoppel exception applies, appellees
have not proven a probable right to recover on the merits of their claims based
on the theory that AISD is estopped from denying an agreement to admit the
Firestone Drive children into the district without charging tuition.  We need not decide AISD=s first two complaints as to whether estoppel can be used against it
in the first place because we determine that appellees failed to show a probable
right to recover on the merits of their claims based on their estoppel theory.[15]

The trial court=s order granting the temporary injunction stated the following:

The
court finds that [appellees] have established probable success on the merits
because the evidence in this case demonstrates that








it is an exceptional case requiring
the application of estoppel to prevent manifest injustice to [appellees]
and their children.  In so concluding,
this Court is not intending to interfere with AISD=s exercise of its government[al] powers, but instead is maintaining
the status quo so that the parties= rights can be determined. [Emphasis added.]

When announcing its decision to grant the
injunction after the hearing, the trial court noted,

I
believe that this falls into one of those limited circumstances in that for
this school year they were previously enrolled in the spring [2006] thinking
they were going to go to [AISD].  

 

The school
district got the complaint back in September of 2005.  They didn=t at that point in time say, as an abundance of caution, you may be
required to pay X amount of dollars in tuition. 
And even when they made the resolution on June 19th, . . . even then the
school district didn=t tell them
you have to do X amount of dollars.  In
fact, that didn=t come up
until just before school started.  And so
I think it would be unfair for this school year to not give them an
opportunity to find other arrangements . . . . 
[Emphasis added.] 








It is clear from the trial judge=s comments at the hearing that he believed it would be manifestly
unjust for AISD (1) to accept the 2006-07 school year preregistration forms for
appellees= children in
the spring of 2006 without informing them that they could be charged tuition to
attend AISD for that school year, (2) to allow appellees to believe that their
children were indeed preregistered for the 2006-07 school year without payment
of tuition,[16]
and (3) to then attempt to force appellees to prepay tuition for the entire
school year in full just days before the 2006-07 school year began.

When appellees= children started attending AISD schools, the district=s official, published policy was that

[n]o nonresident students
shall be permitted to attend District schools, except as provided by this
policy. . . .  Nonresident students may
continue in attendance under this policy on a tuition basis . . . .  The Board shall determine annually and within
statutory limits the amount of tuition, if any, to be charged . . . .  The Board may waive tuition for a student
upon written application by the student or parent or guardian, upon the recommendation
of the Superintendent . . . .  The
District may initiate withdrawal of students whose tuition payments are
delinquent.

Appellees contend that they presented the
following evidence tending to support their estoppel theory:  the 1997 letter from Koonce to VanTrease, the
language in the June 19, 2006 resolution stating that Athis Resolution is conditioned upon Firestone Drive not being annexed
into the [AISD],@ and section
25.038 of the education code.








Appellees contend that they
relied on the letter in enrolling their children in AISD and in believing that
their children could attend AISD without having to register as transfer
students or pay tuition.  But the evidence
shows that appellees did not know of the existence of the letter until 2006Cafter they signed the petition to have their street released from DISD
and included in AISD.  Thus, appellees
could not have relied on the letter to support their children=s continued enrollment in AISD after they had already learned that
their lots were located in DISD rather than AISD.








For estoppel to apply against
a governmental entity, the person seeking to estop the entity must show, among
other things, that he or she relied on an act authorized by the entity.  City of San Angelo v. Deutsch, 91
S.W.2d 308, 309 (Tex. 1936); Maguire Oil Co. v. City of Houston, 69
S.W.3d 350, 366 (Tex. App.CTexarkana 2003, pet. denied). 
But we have already determined that there is no evidence that the Board
authorized, or even was aware of, the letter from Koonce to VanTrease.  Thus, the letter cannot support appellees= estoppel defense.  Cf.
Bowman v. Lumberton ISD, 801 S.W.2d 883, 888 (Tex. 1990) (op. on reh=g) (Estoppel my apply against a subdivision of government Awhere the governing body is a board . . . if the evidence clearly
indicates that the subordinate officer=s act was done with the knowledge of the governing body and was so
closely related to the expressed will of the governing body  [so] as to constitute [the officer=s act] that of the board . . . itself.@); La Villa ISD v. Gomez Garza Design, Inc., 79 S.W.3d 217,
221-22 (Tex. App.CCorpus
Christi 2002, pet. denied) (estopping school district from asserting that
superintendent had no authority from board to enter into construction design
contract when evidence showed that superintendent=s action was taken with the board=s Aknowledge
and implicit approval@).

Moreover, as we have
previously stated, the letter does not say that the Firestone Drive residents= children would be able to attend AISD schoolsCupon payment of tuition or otherwiseCin perpetuity.[17]  It specifically refers to AISD=s current policy and that the children Acould be,@ not Adefinitely would be,@ accepted into the district with no tuition charge; it does not
indicate how long such students would be able to attend on a nontuition basis,
nor does it promise that the Board would never change the 1997 transfer
policy.  Thus, the trial court could not
use the letter as a basis for estopping AISD from denying the existence of an
agreement allowing the Firestone Drive residents= children to attend AISD schools for free indefinitely.

Appellees next contend that
they showed that AISD is estopped from charging them tuition because of the
language in the resolution that it was Aconditioned upon Firestone Drive not being annexed into@ AISD.  








The recitals in the
resolution begin with the acknowledgment that the Firestone Drive residents
signed the petition, and that as a result, AISD approved the petition to annex
Firestone Drive, but that DISD voted to reject it.  It then acknowledges that AISD Ahas permitted the residents of Firestone Drive to attend the District
without the payment of tuition@ and notes the residents= community ties with AISD and their belief when they bought their
homes that their children could attend AISD. 
The resolution then contains the following recitals:

WHEREAS, the [AISD] is not accepting new transfer
students;

 

WHEREAS, the [AISD] has been requesting other
transfer students to pay tuition;

 

WHEREAS, the [AISD=s]
lack of available funds necessitates the District requiring all nonresident
students to pay tuition.

 

It also includes the following resolutions, in
pertinent part:

RESOLVED, That current residents of Firestone
Drive may be permitted to attend [AISD] upon the payment of tuition and in
accordance with District Policy governing student transfers;

 

RESOLVED, That residents that move to Firestone
Drive after the adoption of this Resolution shall not be granted a transfer
into [AISD];

 

RESOLVED, That this Resolution is conditioned
upon Firestone Drive not being annexed into the [AISD];

 








RESOLVED, That the [AISD] reserve[s] the right to
rescind this Resolution at any time with or without cause;

 








Appellees contend that
because their appeal of DISD=s decision had been filed when the Board passed the resolution, they
relied on the conditional language to mean that the Board did not intend to
charge tuition until that appeal was resolved. 
The trial court stated that it thought the resolution Awas inartfully drafted when it does talk about the condition of the
annexation, which I think could be interpreted to - - somebody could rely on
that that [sic] meant we=re going to
wait and see what the final decision is going to be.@  Accepting as true appellees= evidence that they relied on this language to mean that AISD would
not charge them tuition until after the conclusion of the DISD appeal, we
nevertheless observe that there is no evidence that AISD intended for appellees
to act in reliance upon this language, i.e., by failing to prepare for the
possibility of paying tuition or by failing to make arrangements to enroll in
DISD or a private school.  Although an
inference can be made that AISD deliberately waited until less than a month
before the beginning of the 2006-07 school year to inform appellees of the
tuition amount in an effort to force them to enroll in DISD instead of AISD if
they could not afford to pay the tuition, there is no evidence in the record of
such an intent.[18]  One of the resolutions clearly states that
attendance by current Firestone Drive residents is conditioned upon payment of
tuition.  Superintendent Pierel also
testified that AISD=s Board does
not get any concrete budget numbers for the next school year until Ausually the first part of the summer.@  She also testified that the
resolution was drafted by AISD=s attorney.  Even construing the
evidence in the light most favorable to the trial court=s ruling, appellees have not shown a probable right to recover as a
result of the language in the resolution.








Finally, appellees contend
that AISD is estopped from charging them tuition by virtue of section 25.038 of
the education code, which provides that Aunless a tuition fee is prescribed and set out in a transfer agreement
before its execution by the parties, an increase in tuition charge may not be
made for the year of that transfer that exceeds the tuition charge, if any, of
the preceding school year.@  Tex. Educ. Code Ann. ' 25.038 (Vernon 2006).  Here,
the July 26, 2006 letter that Superintendent Pierel sent appellees listed the
tuition as $6,487.50, but the A2006-07 Application for Transfer on Tuition Basis@ that she included with the letter did not show a tuition amount.  Appellees contend that because no tuition
amount was included in the application, it does not meet the requirements of
section 25.038.

To the extent that the
application could be considered a Atransfer agreement@ under section 25.038,[19]
there is no evidence that AISD made any false representations or concealed any
material fact with the intent that appellees rely on the representation or
concealment.  Superintendent Pierel=s accompanying letter plainly states the tuition amount and the
payment requirements, as does her email to Jeffrey Wolf.  As a result, appellees have not shown a
probable right to recover on their claims under an estoppel theory based on
section 25.038.













Accordingly, for the reasons
set forth above, considering the record in the light most favorable to the
trial court=s ruling, we
conclude that appellees did not bring forward evidence tending to show a
probable right to recover on the merits of their claims supported by their
estoppel theory.[20]  Moreover, even if this evidence could be
construed as tending to show a probable right to recover on the merits of their
claims based on proof of their estoppel theory, we do not believe that these
facts rise to the level of Amanifest injustice@ that would be required were we to determine that the exception to the
general rule that school districts are generally not subject to estoppel is
applicable.[21]  Although it would have been more convenient
to appellees if AISD had given them more notice of the tuition requirement for
the 2006-07 school year and allowed them to pay it in monthly installments,
there is no evidence that AISD Aacted deliberately to induce [appellees] to act in a way that
benefitted [AISD] but prejudiced@ appellees.  Super Wash,
198 S.W.3d at 775.  In addition,
appellees have failed to show that AISD=s actions have resulted in a permanent loss of their claims
against AISD; for example, appellees have not sought a waiver of tuition
payments in accordance with AISD=s current transfer policy,[22]
nor have they appealed AISD=s decision to the Texas Commissioner of Education.  Accordingly, we conclude and hold that the
trial court=s injunction
cannot be upheld based on appellees= estoppel theories.[23]

Unjust Enrichment

Appellees also pled that
because 

AISD
has the ability to immediately detach land to approve the land trade which AISD=s
superintendent previously indicated would be acceptable to AISD,[24]
AISD will be unjustly enriched by charging tuition to Firestone [Drive]
residents . . . .  AISD will receive per
diem payments from the [S]tate of Texas for [appellees=]
children.  This is the same amount AISD
will receive when annexation of the Firestone properties is complete.  To charge [appellees] tuition in addition to
receiving money from the State will unjustly enrich AISD. 

 













Unjust enrichment, itself, is
not an independent cause of action but rather Acharacterizes the result of a failure to make restitution of benefits
either wrongfully or passively received under circumstances that give rise to
an implied or quasi‑contractual obligation to repay.@  Friberg-Cooper Water Supply
Corp. v. Elledge, 197 S.W.3d 826, 832 (Tex. App.CFort Worth 2006, pet. filed) (quoting Walker v. Cotter Props., Inc.,
181 S.W.3d 895, 900 (Tex. App.CDallas 2006, no pet.)); Mowbray v. Avery, 76 S.W.3d 663, 679
(Tex. App.CCorpus
Christi 2002, pet. denied); see Best Buy Co. v. Barrera, 214 S.W.3d 66,
73 (Tex. App.CCorpus
Christi 2006, pet. filed).  The doctrine
applies the principles of restitution to disputes where there is no actual
contract, based on the equitable principle that one who receives benefits that
would be unjust for him to retain ought to make restitution.  Friberg-Cooper, 197 S.W.3d at 832; Mowbray,
76 S.W.3d at 679.  Unjust enrichment is
not a proper remedy Amerely
because it >might appear
expedient or generally fair that some recompense be afforded for an unfortunate
loss= to the claimant, or because the benefits to the person sought to be
charged amount to a windfall.@  Heldenfels Bros. Inc. v.
City of Corpus Christi, 832 S.W.2d 39, 42 (Tex. 1992) (quoting Austin v.
Duval, 735 S.W.2d 647, 649 (Tex. App.CAustin 1987, writ denied)); Mowbray, 76 S.W.3d at 679.  To recover under an unjust enrichment theory,
the benefits to the other party must be actually unjust under the principles of
equity.  Mowbray, 76 S.W.3d at
679; Burlington N. R.R. v. Sw. Elec. Power Co., 925 S.W.2d 92, 97 (Tex.
App.CTexarkana 1996), aff=d, 966 S.W.2d 467 (Tex. 1998).

AISD=s accountant, Paul Lyles, testified that the district does not receive
state funds for students if it receives tuition for their attendance.  Appellees presented no evidence to the
contrary; accordingly, we hold that appellees did not produce evidence tending
to show a probable right to recover on an unjust enrichment theory.

Alleged Violation of Open Meetings Act








Appellees also contended that
AISD violated the Open Meetings Act by failing to provide proper notice of the
June 19, 2006 meeting agenda, misrepresenting the agenda on its website and
falsely certifying that the correct agenda had been timely posted on the
website in accordance with the Open Meetings Act, and by voting without
discussion or deliberation in open session. 
Appellees allege that the acts taken by the Board before and during that
meeting are therefore voidable under section 551.141 of the government code,
that they are entitled to declaratory relief that the acts of the Board taken
on June 19, 2006 are void, and that they are entitled to injunctive relief to
enjoin these void actions.  They also
contend that as a result of the Open Meetings Act violation, the Board=s actions at that meeting failed to change the status of appellees= children from Ain-district@ students to transfer students and, further, that it would be unlawful
to charge tuition for Ain-district@ students. 

The Open Meetings Act
requires every regular, special, or called meeting of a governmental body,
including school boards of trustees, to be open to the public unless otherwise
required by the Act.  Tex. Gov=t Code Ann. '' 551.001(3)(e), .002 (Vernon 2004); City of San Benito v. Rio
Grande Valley Gas Co., 109 S.W.3d 750, 757 (Tex. 2003).  AGovernmental actions in violation of the Open Meetings Act are
voidable.@  Tex.
Gov=t Code Ann. ' 551.141; Olympic Waste Servs. v. City of Grand Saline, 204
S.W.3d 496, 504 (Tex. App.CTyler 2006, no pet.).








Generally, under the Open
Meetings Act, seventy-two hours= written notice shall be given of the date, hour, place, and the
subject matter of each meeting held by the governmental body.  Tex.
Gov=t Code Ann. ' 551.041 (Vernon 2004), ' 551.043 (Vernon Supp. 2004); City of Port Isabel v. Pinnell,
207 S.W.3d 394, 406 (Tex. App.CCorpus Christi 2006, no pet.); Hill v. Palestine ISD, 113 S.W.3d
14, 16 n.3 (Tex. App.CTyler 2004,
pet. denied).  A school district must
post notice of each meeting Aon a bulletin board at a place convenient to the public in the central
administrative office of the district.@  Tex. Gov=t Code Ann. ' 551.051.  In addition, a school
district that maintains an Internet website must concurrently post notice of
each meeting on its website; a school district Athat contains all or part of the area within the corporate boundaries
of a municipality with a population of 48,000 or more@ must also concurrently post the agenda for each meeting on its
website.  Id. ' 551.056(a)B(c) (Vernon
Supp. 2006).  However, A[t]he validity of a posted notice of a meeting or an agenda by a
governmental body . . . subject to [551.056] that made a good faith attempt to
comply with [its] requirements . . . is not affected by a failure to comply
with a requirement of [551.056] that is due to a technical problem beyond the
control of the governmental body.@  Id. ' 551.056(d).

The intent of the Act is to
safeguard the public=s interest
in knowing the workings of its governmental bodies.  Cox Enters., Inc. v. Bd. of Trs. of Austin
ISD, 706 S.W.2d 956, 960 (Tex. 1986); Stockdale v. Meno, 867 S.W.2d
123, 124-25 (Tex. App.CAustin 2003,
writ denied).  The intended beneficiaries
of the Act are not individual citizens, but members of the interested
public.  City of San Antonio v. Fourth
Court of Appeals, 820 S.W.2d 762, 765 (Tex. 1991) (orig. proceeding); Stockdale,
867 S.W.2d at 125.  The supreme court
explained in City of San Antonio that








[t]he
Open Meetings Act is not a legislative scheme for service of process; it has no
due process implications.  Rather, its
purpose is to provide Aopenness
at every stage of [a governmental body=s] deliberations.@ . .
. . [W]e need not . . . inquire into whether a notice was tailored to reach
those specific individuals whose private interests are most likely to be
affected.

 

City of San Antonio, 820 S.W.2d at 765 (citations omitted); Stockdale, 867 S.W.2d
at 125.  Accordingly, appellees are not
entitled to any notice other than that given to the public at large.  See Stockdale, 867 S.W.2d at 125.








The evidence at the hearing
was undisputed that AISD posted the following agenda item on the bulletin board
at the administration building at 5:00 p.m. on June 16, 2006, at least
seventy-two hours before the 6:00 p.m. June 19, 2006 meeting:  AConsider approving resolution allowing the current residents of
Firestone Drive to attend [AISD] upon payment of out of District tuition.@  The parties stipulated that
AISD=s webmaster received the correct agenda to post seventy-two hours
before the June 19, 2006 meeting, but he created a bad link, so the May 19
meeting agenda appeared instead of the June 19 agenda.  They also stipulated that this problem was
beyond the school district=s control.  The link was
corrected a few hours before the meeting began. 
The May 19 meeting agenda did not have any item referring to the
charging of tuition for Firestone Drive residents.  The superintendent never informed appellees
or any of the other Firestone Drive residents personally about the tuition
issue being on the agenda.  Jeffrey Wolf
testified that his neighbors called the administration office on June 16 and
were told that the Firestone Drive residents were not on the agenda for the
June 19 meeting.  However, because he and
Janice attended the meeting, it is undisputed that they had at least some
notice of the meeting.

The evidence at the hearing
showed that AISD complied with the notice requirements of section 551.051 and
attempted to comply with the requirements of section 551.056 regarding posting
notice on the website.  There is no
evidence of any bad faith by AISD in its webmaster=s inadvertent posting of a bad link to the wrong agenda for the June
19 meeting.  Accordingly, appellees
failed to present evidence tending to show a probable right to recover on their
Open Meetings Act claim based on a lack of notice.  See Tex.
Gov=t Code Ann. '' 551.051, .056(d).








Appellees also contended that
the Board improperly voted on the resolution without deliberation in an open
meeting.  There is no evidence indicating
that the Board deliberated on the matter in a closed meeting, and the Open
Meetings Act does not require the Board to deliberate before
voting.  See United ISD v. Gonzalez,
911 S.W.2d 118, 127 (Tex. App.CSan Antonio 1995), writ denied, 940 S.W.2d 593 (Tex. 1996); cf.
Tex. Gov=t Code Ann. ' 551.082 (Vernon 2004) (allowing school district to deliberate on
student disciplinary matter or complaint by employee against another employee
in closed session unless parent or guardian of student or employee against whom
charges are brought requests otherwise in writing).  Accordingly, we conclude and hold that
appellees did not present any evidence tending to show a probable right to
recover on their claims based on AISD=s alleged violation of the Open Meetings Act.

Violation of Procedural Due Process
Rights








In support of their
procedural due process complaints, appellees alleged that Aon the Thursday prior to the Monday, June 19 meeting when notice of
any school board meeting was required to be posted, the AISD administrative
office told Firestone [Drive] residents via telephone that they were not on the
agenda for the June 19 meeting. . . . 
None of the Firestone [Drive] residents had an inkling of the possible
board action until the afternoon of June 19.@  The allegations also include
that AISD=s counsel
had agreed to provide appellees= counsel with notice of any such agenda item but failed to do so, and
that the wrong agenda was posted to the district=s website.  They asked for a
declaratory judgment that Athe action of the board on June 19 approving tuition is void because
of due process infirmities.@  Appellees also alleged that
their residence on Firestone Drive and the 1997 letter create a property right
that is protected by the Texas Constitution and that the notice of the June 19,
2006 meeting Awas
insufficient to withstand due process scrutiny under the Texas Constitution.@

Procedural due process
requires that a governmental entity=s deprivation of life, liberty, or property, even if consistent with
substantive due process, must Abe implemented in a fair manner.@  United States v. Salerno,
481 U.S. 739, 746, 107 S. Ct. 2095, 2101 (1987); City of Arlington v.
Centerfolds, Inc., No. 02-06-00080-CV, 2007 WL 1725821, at *7 (Tex.
App.CFort Worth June 14, 2007, no pet. h.). 
The first inquiry in any due process claim under the United States
Constitution is whether the plaintiff has been deprived of a protected property
or liberty interest.  Am. Mfrs. Mut.
Ins. Co. v. Sullivan, 526 U.S. 40, 59, 119 S. Ct. 977, 989 (1999); Centerfolds,
2007 WL 1725821, at *7.








Appellees claim that they
have a property interest in their children=s attending AISD without payment of tuition.  Appellees admittedly do not live in the
district.  Section 25.001(b) of the
education code provides that A[t]he board of trustees of a school district . . . shall admit into
the public schools of the district free of tuition a person who is over five
and younger than 21 years of age on the first day of September of the school
year in which admission is sought if:  .
. . the person and either parent of the person reside in the school district.@  Tex. Educ. Code Ann. ' 25.001(b)(1).  Section
25.001(b) also provides that a school district shall admit certain other
students who do not live in the district free of tuition, but none of those
other situations applies here.  Id.
' 25.001(b)(2)B(9).  Accordingly, appellees do not have a
statutory right to attend AISD schools free of charge.

Neither do they have any
property right as a result of the 1997 letter from Koonce to VanTrease.  We have already concluded that even if the
letter could be construed as an authorized, enforceable contract, it did not
bind the district indefinitely.  Moreover,
estoppel cannot create a right that does not otherwise exist.  Odessa Tex. Sheriff=s Posse, 215 S.W.3d at 470; Dallas
Cent. Appraisal Dist. v. GTE Directories Corp., 905 S.W.2d 318, 322 (Tex.
App.CDallas 1995, writ denied); see Sun Oil Co. (Del.) v. Madeley,
626 S.W.2d 726, 734 (Tex. 1981).

Finally, we have already
determined that there is no evidence that AISD failed to comply with the notice
requirements of the Open Meetings Act. 
Appellees have cited no authority supporting their contention that they
were entitled to any additional notice other than what was statutorily
required.

Accordingly, we conclude and
hold that appellees did not offer evidence tending to show a probable right to
recover on their claims because of a procedural due process violation by AISD.








After reviewing the record in
the light most favorable to the trial court=s order and indulging every reasonable inference in its favor, we
conclude that appellees failed to show a probable right to recover on the
merits of any of their  claims based on
any of their alleged theories. 
Accordingly, under the prescribed standard of review, we must conclude
that the trial court abused its discretion in entering the temporary
injunction.  We sustain AISD=s first issue.  Because we grant
relief on AISD=s first
issue, we need not address its second and third issues.[25]  See Tex.
R. App. P. 47.1; Teague v. City of Jacksboro, 190 S.W.3d 813, 821
n.7 (Tex. App.CFort Worth
2006, pet. denied).

Appellee=s
Cross-Issue








In one
cross-issue, appellees contend that the trial court abused its discretion by
failing to issue a temporary injunction enjoining AISD from interfering with
appellees= pursuit of
their appeal from DISD=s denial of
their detachment petition that is currently pending before the Texas
Commissioner of Education.  Because we
have concluded that appellees did not introduce evidence tending to show a
probable right to recover on any of their claims and, therefore, that they were
not entitled to a temporary injunction, we overrule this issue.

Conclusion

Having sustained AISD=s first issue and overruled appellees= cross-issue, we reverse and vacate the trial court=s order granting a temporary injunction and remand the case to the
trial court for further proceedings on the merits.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

 

DELIVERED:
August 9, 2007

 

 

 

 

 

 

 

 

 











[1]At
oral argument, the parties informed this court that a hearing officer had
issued a decision but that it was not yet final.  The parties have not notified this court of
any change in the status of that decision; thus we presume it is still pending
and not yet final.  Moreover, there is no
such decision available yet on the Texas Commissioner of Education=s
website.  See
http://www.tea.state.tx.us /commissioner (last visited August 8, 2007).





[2]Either
the principal=s or
superintendent=s
office told her that all children living in Tour 18 were residents of the
district.





[3]On
the 2005-06 school year enrollment forms, both the Zimmermans and the Wolfs
listed their correct addresses on Firestone Drive and answered the question, ASchool
District you reside in,@ with
AArgyle.@  Janice testified that she did not know that
her home was located in DISD rather than AISD until spring 2005 when she tried
to vote in an AISD board election and was told she could not vote because she
did not live in AISD.  Vicki testified
that she found out they paid taxes to DISD rather than AISD in 2004 after she
first enrolled her children in AISD. 





[4]Janice
testified that only Aeight
or ten@
houses out of 125 on Firestone Drive were affected; however, for purposes of
discussion, we will refer to the part of the street located in DISD as
Firestone Drive, without differentiating between the part of the street that is
located in DISD and the part that is located in AISD.





[5]Pierce
testified that Superintendent Pierel Aasked if I [Pierce] could
possibly draw up a petition requesting that we be annexed into the Argyle
schools.@  However, Pierel testified that she did not
ask Pierce to prepare the petition; instead, in response to Pierce=s
assertion that the residents of Firestone Drive had wanted to be in AISD Afor
many years,@
Pierel Atold
[Pierce] what the process was and that the district could not do this petition,
that it would take the citizens to do the petition.@ 





[6]The
resolution also provided that Aresidents that move to
Firestone Drive after the adoption of this [r]esolution shall not be granted a
transfer into@
AISD.  The resolution further stated that
it was Aconditioned
upon Firestone Drive not being annexed into@ AISD.





[7]This
accelerated appeal was argued to this court and submitted on January 30,
2007.  We determined after oral argument
that the parties=
dispute was appropriate for referral to mediation.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 154.021 (Vernon 2005).  Accordingly, we ordered the parties to
mediate the dispute within forty-five days to give them an opportunity to
settle.  On the parties=
agreed motion, we extended the time to mediate until April 21, 2007. On April
23, 2007, the mediator informed this court that the parties were unable to
settle. 





[8]This
argument is based on a 1997 letter written by then -superintendent Mickey
Koonce to Gary VanTrease, the developer of the subdivision.  We will discuss the letter in more detail
below.





[9]Appellees
did not identify these Aother
statutes@ in
their petitions.





[10]Jeffrey
obtained a copy of the letter from AISD in 2006 pursuant to an open records
request.





[11]The
first page is not included in the record.





[12]Miriam
Pierce testified that when she spoke with Superintendent Pierel about the
complaint and about circulating a petition to the Firestone Drive residents,
she told Pierel that she Abelieve[d]
everyone on the board had been aware of that [that the children of Firestone
Drive residents were allowed to go to AISD without paying taxes to the
district].@  According to Pierce, Pierel responded, A[Y]es,
and we don=t
fault anyone on your street.@  However, even viewing this evidence in the
light most favorable to the trial court=s ruling, it is not evidence
that Koonce=s
actions in writing the letter were authorized by the Board at that time or that
the current Board had ratified the letter. 
See Willis v. Donnelly, 199 S.W.3d 262, 270 (Tex. 2006) (holding
that ratification could be based only on theory that party expressly agreed to
be bound by agreement or retain the benefits of agreement); Miller v. Kennedy
& Minshew, P.C., 142 S.W.3d 325, 342‑43 (Tex. App.CFort
Worth 2003, pet. denied) (AA person ratifies an
unauthorized act if, by word or conduct, with knowledge of all material facts,
he confirms or recognizes the act as valid. 
Ratification may be inferred by a party=s
course of conduct and need not be shown by express word or deed.@)
(citation omitted).  Even if this
evidence of the Board=s
knowledge could be construed as a ratification, however, it does not change the
nature of the language of the letter, which does not purport to bind AISD in
perpetuity.  See infra page 16-17.





[13]AISD=s
counsel informed this court at oral argument that Koonce is deceased.





[14]The
supreme court mentioned the estoppel exception in Bowman v. Lumberton ISD,
but decided the issues in that case under other Awell
recognized@
exceptions to the general rule.  801
S.W.2d 883, 888 (Tex. 1990) (op. on reh=g).  Also, that case was a summary judgment case,
in which the issue was whether the district established its defense as a matter
of law.  Id. at 884-85.





[15]It
appears from the record that the trial court may not have reached a review of
the merits of appellees=
underlying claims after determining that the exception to the general rule that
governmental entities are not subject to estoppel is applicable here.  After stating his determination that the exception
to the general estoppel rule applied to AISD, the judge stated that AI=m not
reaching the final merits of the case, but if [AISD] wins, then no
longer will they [appellees] have the argument saying, well, can we just stay
one more year so we can figure out where to go. 
Basically, they=re on
notice that you might need to start looking at other options.@  [Emphasis added.]  However, to be entitled to a temporary
injunction, a party must not only allege a cause of action (here, declaratory
judgment and injunctive relief based on the theory that AISD was estopped from
asserting that a valid, enforceable agreement did not exist), but also offer
evidence tending to sustain that cause of action.  Fox, 121 S.W.3d at 857; Miller
Paper Co., 901 S.W.2d at 597; see also Dillard v. Austin ISD, 806
S.W.2d 589, 595 (Tex. App.CAustin 1991, writ denied)
(op. on reh=g)
(holding that a determination that the exception applies does not address the
merits of an underlying claim, only whether an estoppel defense may be asserted
against a governmental entity).





[16]Although
Jeffrey Wolf attended the June 19 meeting and knew the outcome of the Board=s
vote on the resolution, he testified at the temporary injunction hearing that
he did not think that tuition would be charged until his appeal from DISD=s
denial of the detachment petition was resolved. 
He based his opinion on the conditional language in the resolution.





[17]Appellees
contend that the letter allows all children of Firestone Drive residents to
attend AISD indefinitely as nontransfer students without paying tuition. 





[18]Although
Superintendent Pierel=s
July 26, 2006 letter told appellees that all tuition must be paid in full
before the beginning of the school year, she sent an email to Jeffrey Wolf
stating that the tuition could Abe broken down into two equal
payments at the beginning of each semester.@ 





[19]AISD
contends that any issue regarding the improper charging of tuition would be
more properly brought before the Texas Commissioner of Education under section
7.057 of the education code, which provides that

 

a
person may appeal in writing to the commissioner if the person is aggrieved by:

 

(1)
the school laws of this state;  or

(2)
actions or decisions of any school district board of trustees that violate:

(A)
the school laws of this state;  or

(B) a
provision of a written employment contract between the school district and a
school district employee, if a violation causes or would cause monetary harm to
the employee.

 

Tex. Educ. Code Ann. '
7.057 (Vernon 2006).





[20]The
trial court stated on the record that Athere=s
some definite fact questions about what representations were made and when.@ 





[21]Because
we decide that the exception would not be applicable in this case if we were to
apply it, we need not decide whether the exception is limited solely to
municipalities.





[22]This
policy states that A[t]he
Board may waive tuition for a student upon written application by the student
or parent or guardian, upon the recommendation of the Superintendent.@ 





[23]By no
means do we intend to diminish the trial court=s
justifiable concerns regarding every child=s education and its relative
proximity to a child=s
residence, especially in the unique situation presented here where children on
the same street end up in different school districts.





[24]Jeffrey
Wolf testified that Superintendent Pierel had told him that AISD would be
willing to trade land with DISD so that DISD would be more willing to detach
Firestone Drive.





[25]These
issues relate to whether appellees proved a probable, imminent, and irreparable
injury pending the outcome of the suit and whether they are precluded from
obtaining the equitable relief of an injunction because, by misrepresenting
their status as residents of AISD, they have unclean hands.